**James Richard ODLE, Petitioner–Appellant,**

v.

**Jeanne WOODFORD, Acting Warden, of California State Prison at San Quentin, Respondent–Appellee.**

No. 99–99029.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 2000

Filed Feb. 6, 2001

---

James R. Forbes, Lillick & Charles LLP, Susan K. Alexander, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, California, argued the cause for Appellant.

Dane R. Gillette, Senior Assistant Attorney General of State of California, San Francisco, California, argued the cause for Appellee.

Before: KOZINSKI, HAWKINS and BERZON, Circuit Judges.

KOZINSKI, Circuit Judge.

We consider the circumstances in which a criminal defendant is entitled to a hearing to determine his competency to stand trial.

## I

James Richard Odle was tried and convicted in 1983 of two first degree murders and sentenced to death. He unsuccessfully exhausted his state court remedies and filed a federal habeas petition raising fifty-six claims. After protracted proceedings, the district court denied all relief in 1999,[1] and Odle appeals.

Odle filed his habeas petition before the Antiterrorism and Effective Death Penalty Act (AEDPA) went into effect on April 24, 1996, and so AEDPA does not apply to the merits of this appeal. However, he is subject to AEDPA's procedural requirement that he obtain a Certificate of Appealability (COA). See Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000).[2] Because Odle filed his appeal before Slack was decided, we construe his notice of appeal as an application for a COA, and determine whether he has made a "substantial showing of the denial of a constitutional right" with respect to each issue he seeks to raise on appeal. See id.; Morris v. Woodford, 229 F.3d 775, 779 (9th Cir.2000).[3]

---

1. The district court first denied Odle's original petition, see Odle v. Vasquez, 754 F.Supp. 749 (N.D.Cal.1990), but later granted his motion to reconsider, and he filed an amended petition in 1993. The court granted the state's motion for summary judgment on certain claims, see Odle v. Calderon, 884 F.Supp. 1404 (N.D.Cal.1995), and then denied all but three of the remaining claims. See Odle v. Calderon, 919 F.Supp. 1367 (N.D.Cal.1996). After an evidentiary hearing on two of them, the court denied all three claims. See Odle v. Calderon, 65 F.Supp.2d 1065 (N.D.Cal.1999).

2. The district court granted Odle's request for a Certificate of Probable Cause (CPC) on October 4, 1999. A CPC, unlike a COA, permits an appeal as to the denial of the entire petition rather than specific issues as required by 28 U.S.C. § 2253(c)(3).

3. The district court denied all fifty-six claims that Odle brought in his habeas petition. Odle raises only nine of those claims on appeal and so has abandoned the other forty-seven. See Morris, 229 F.3d at 779.

Odle raises nine claims before us. To make a "substantial showing," he must demonstrate that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed." *Slack,* 120 S.Ct. at 1603–04 (internal quotation marks omitted). Five of his claims meet this standard, and we issue a COA as to each of the following issues: (1) whether his first attorney's mental incompetence denied him effective assistance of counsel; (2) whether his replacement attorney had an actual conflict that denied him effective assistance of counsel; (3) whether his attorney's failure to develop and present available mental health expert testimony at the penalty phase denied him effective assistance of counsel; (4) whether the state court's failure to hold a competency hearing denied him due process; and (5) whether the district court's failure to hold a competency hearing denied him due process.[4] At this time, we consider only the fourth of these claims.

## II

■ A defendant may not be criminally prosecuted while he is incompetent, and the state must give him access to procedures for determining his competency. *See Medina v. California,* 505 U.S. 437, 449, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (citing *Drope v. Missouri,* 420 U.S. 162, 172–73, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 386, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)). We have held that a trial judge must conduct a competency hearing whenever the evidence before him raises a bona fide doubt about the defendant's competence to stand trial, even if defense counsel does not ask for one. *See De Kaplany v. Enomoto,* 540 F.2d 975, 979 (9th Cir.1976) (en banc). The trial judge must satisfy himself that the defendant is able to understand the proceedings against him and assist counsel in preparing his defense. *See Drope,* 420 U.S. at 172, 95 S.Ct. 896 (citing *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

■ We review the record to determine whether evidence before the state trial court raised a "bona fide doubt" that Odle was competent to stand trial. *See Pate,* 383 U.S. at 385, 86 S.Ct. 836; *De Kaplany,* 540 F.2d at 979. If a reasonable judge would have had such a doubt, Odle was entitled to a competency hearing at the time of trial and the failure to hold such a hearing violated his right to due process. *See Moran v. Godinez,* 57 F.3d 690, 695 (9th Cir.1994).

■ Odle's mental troubles started in 1973 when he suffered severe trauma to his brain as a result of a car accident. A surgeon performed a temporal lobe lobectomy, removing a $3 \times 3 \times 4$ inch piece of his brain. The surgery left just a flap of skin to cover the opening in his skull, and only when Odle complained thirteen months later that his brain was pulsating beneath the skin, did the surgeon insert a plastic plate to close the opening. Doctors, family and friends testified that this experience left Odle "a different guy," one who appeared to be mentally unstable and out of control.

Family members and employers further testified that the Odle they knew before the accident and the man he became afterwards were like "night and day." He changed from a man who did not miss "a day he was supposed to work" to one who was "more like ... half of a person." He seemed confused and talked slowly, like a

---

4. Odle has not made a "substantial showing that he was denied a constitutional right" with respect to the following four claims: (1) whether his attorney's stipulation to a disputed issue of fact regarding ballistics denied him effective assistance of counsel; (2) whether the state knowingly presented false testimony by an expert witness that denied him due process; (3) whether the state's failure to disclose information about an expert witness's potential bias denied him due process; and (4) whether cumulative errors denied him a fundamentally fair trial. We therefore decline to issue a COA as to each of them.

child; he had trouble controlling his impulses and often acted bizarrely and wildly. He would get a "hot look in his eye like a junk-yard dog" and would "beat his head against the wall."

Mental health records and expert witnesses offered an explanation for the erratic behavior and personality change that Odle's family and friends had observed: Odle may never have recovered from the severe trauma he suffered in the car accident. While county health records revealed no mental disturbances or mental health visits prior to the accident, Odle was involuntarily committed to a psychiatric ward three times in as many years following the accident. The first time, he was hospitalized after taking twelve Tylenol tablets. "[F]or the greater part of his [nine day] hospital stay," Odle acted "combative, assaultive, agitated [and] disoriented," and a nurse found him pounding his head against the wall. Doctors diagnosed him as suffering from "acute brain syndrome." Later that year, the same day he was discharged from the surgery to close his skull, Odle was committed a second time. He "had become violent, he threatened himself [and] others." As another doctor described it, "he seemed to have little control over these outbreaks."

As Odle went in and out of the psychiatric ward, doctors prescribed him different medications, including tranquilizers and antidepressants. But nothing altered his erratic, out-of-control behavior. Two years later, he was committed again, after someone found him prowling around a stranger's backyard, "incoherent," "reliving combat or war somewhere," "confused" and "hallucinating." This pattern ended only when he went to prison in 1976. While there, he slashed his wrists in an attempted suicide. After he was released at the end of 1979, his family believed that he continued to "go downhill" and was not acting "in his right mind."

The trial judge had before him a comprehensive record of this history and heard the testimony of expert witnesses who described the extensive damage to Odle's brain. Doctors testified that Odle probably suffered from an organic brain disorder, which causes "defects in the way [a person] functions intellectually, socially, and emotionally." One psychiatrist asserted generally that severe head injuries like the one Odle suffered could cause seizure disorders affecting behavior for a prolonged period of time. Another doctor had administered an electroencephalogram in 1982, before trial, which revealed brain abnormalities consistent with an epileptic seizure disorder. He testified that Odle's brain injury would probably cause behavioral disturbances beyond his control. This diagnosis was consistent with Odle's complaints, documented during his hospitalizations, that he often felt unable to control his impulses.

 The State argues that this evidence of mental impairment is irrelevant because Odle appeared calm in the courtroom. But calm behavior in the courtroom is not necessarily inconsistent with mental incompetence. Some forms of incompetence manifest themselves through erratic behavior, others do not. Odle's behavior in the courtroom does not refute the large body of clinical evidence which tended to cast doubt on his competence.

Moreover, records from the county jail suggest that this calm masked continuing mental impairment. Less than a year before the trial began, prison officials found Odle lying face down in his jail cell, apparently unconscious. Odle had attempted to commit suicide by setting fire to his cell. The prison's mental health staff diagnosed this as a brief psychotic episode and, given his history of depression and past suicide attempts, placed him in a suicide observation room for several weeks.

 The State also relies on the fact that Odle's own lawyer did not question his competence at the time of trial. It is true that "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense." *Medina,* 505 U.S. at 450, 112 S.Ct. 2572. But coun-

sel is not a trained mental health professional, and his failure to raise petitioner's competence does not establish that petitioner was competent. Nor, of course, does it mean that petitioner waived his right to a competency hearing. *See Miles v. Stainer,* 108 F.3d 1109, 1113 (9th Cir. 1997).[5]

We do not dismiss lightly the fact that no one questioned Odle's competence over the course of two years of pre-trial proceedings and twenty-eight days of trial. *See Hernandez v. Ylst,* 930 F.2d 714, 718 (9th Cir.1991) ("We deem significant the fact that the trial judge, government counsel, and [petitioner's] own attorney did not perceive a reasonable cause to believe [petitioner] was incompetent."). The observations of those interacting with petitioner surely are entitled to substantial weight. But personal observations cannot overcome the significant doubt about Odle's competence raised by the clinical evidence. The record revealed an extensive history of mental impairment, and expert testimony and jail records suggested that Odle's mental problems lay not just in the past, but continued to the time of trial. *Cf. United States v. Loyola–Dominguez,* 125 F.3d 1315, 1318–19 (9th Cir.1997) (competency hearing required where defendant attempted suicide on eve of trial and trial court failed to elicit adequate information to dispel concerns). And, as the trial judge was aware, Odle was missing a piece of his brain the size of a grapefruit.

None of this establishes that Odle was incompetent to stand trial. But we believe a reasonable jurist, given the information available, would have developed doubts on this score. After all, competence to stand trial does not consist merely of passively observing the proceedings. Rather, it requires the mental acuity to see, hear and digest the evidence, and the ability to communicate with counsel in helping prepare an effective defense. *See Dusky,* 362 U.S. at 402, 80 S.Ct. 788; *see also* Note, *Incompetency to Stand Trial,* 81 Harv. L.Rev. 454, 457–59 (1967). The judge may be lulled into believing that petitioner is competent by the fact that he does not disrupt the proceedings, yet this passivity itself may mask an incompetence to meaningfully participate in the process.[6] Where a petitioner has suffered massive trauma to his brain and subsequently exhibits psychotic behavior, some of it while awaiting trial, an inquiry into whether he possesses the mental acuity to participate in the proceedings is the reasonable and appropriate course of action. Failure to do so denied Odle his right to due process. *See Drope,* 420 U.S. at 172, 95 S.Ct. 896.

The state court can nonetheless cure its failure to hold a competency hearing at the time of trial by conducting one retroactively. We have said that retrospective competency hearings may be held when the record contains sufficient information upon which to base a reasonable psychiatric judgment. *See De Kaplany,*

---

5. A petitioner who may be incompetent cannot "knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial," *Pate,* 383 U.S. at 384, 86 S.Ct. 836, nor should he " 'be presumed to possess sufficient intelligence that he will be able to adduce evidence of his incompetency which might otherwise be within his grasp.' " *Medina,* 505 U.S. at 450, 112 S.Ct. 2572 (quoting *United States v. DiGilio,* 538 F.2d 972, 988 (3d Cir.1976)).

6. In a declaration submitted to the state supreme court, Odle's trial lawyer explains Odle's calmness in the courtroom as a strategy for controlling his behavior during trial proceedings. *See* Decl. of William E. Gagen,

Jr. (dated Apr. 3, 1992), Petitioner's Ex. 34, Reply to Opposition to Petition for Writ of Habeas Corpus, *In re Odle,* No. S022451 (Cal. Sept. 16, 1992). Because the lawyer was concerned "about the potential for [Odle] to explode irrationally in court," the lawyer "encouraged him to block out the proceedings whenever they began to agitate him." He coached Odle to "stare at a particular object or objects in the courtroom, such as a coffee cup or sign, so that he could simply focus on those to the exclusion of events in the courtroom that might disturb him." *Id.* at 6. While this evidence was not available to the state trial judge, it illustrates the danger of relying on calm behavior in the courtroom as a guide to mental competence.

**1090**

540 F.2d at 986 & n. 11; *see also Moran,* 57 F.3d at 696. Although many years have passed since Odle was convicted and sentenced, the state trial court should be able to "adduce sufficient evidence" to determine whether Odle was competent to stand trial. *Evans v. Raines,* 800 F.2d 884, 888 (9th Cir.1986).[7] Expert witnesses who testified at trial, as well as experts who have since examined Odle, submitted declarations describing Odle's mental state at the time; defense counsel and an investigator submitted declarations describing Odle's behavior during trial proceedings. Moreover, medical records, psychiatric reports and jail records submitted at trial are still available. Given this old and new evidence, "it is not unreasonable to conclude that a fair retroactive hearing could be ... conducted." *De Kaplany,* 540 F.2d at 986 n. 11.

We therefore remand the case to district court with instructions to grant the writ unless the state trial court conducts a hearing within sixty days to determine whether Odle was competent at the time he stood trial. *See Miles,* 108 F.3d at 1114. The district court shall retain jurisdiction. If the state court vacates the conviction, the district court shall dismiss the habeas petition. If it upholds the conviction, the district court shall review the state court's determination consistent with this opinion. We retain jurisdiction over the case and, if the competency claim is ultimately resolved against him, we will review Odle's remaining four claims as to which we grant the COA. *See Morris,* 229 F.3d at 781.

**REVERSED AND REMANDED.**

---

7. If the state trial court concludes that it is unable to conduct a retrospective competency hearing, then the conviction must be set aside.