[No. A095433. First Dist., Div. Two. May 20, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ARY, JR., Defendant and Appellant.

Counsel

Martin N. Buchanan and James Kyle Gee, under appointments by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, George F. Hindall III and Joan Killeen, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

HAERLE, J.—

## I. INTRODUCTION

James Ary, Jr., was convicted of first degree murder (Pen. Code, § 187),[1] carjacking (§ 215), robbery (§ 211) and being a felon in possession of a firearm (§ 12021, subd. (a)(1)). The jury found true the special circumstances that the murder occurred during the commission of a carjacking, a robbery and while lying in wait. (§ 190.2, subd. (a)(15), (17).) It also found true a firearm use allegation. (§ 12022.5, subd. (b)(1).) Ary was sentenced to life without parole and a consecutive, determinate sentence of 16 years and four months was also imposed.

During the trial, the lower court had before it substantial evidence that Ary, who is mentally retarded, was unable to understand the nature of the proceedings against him or to assist in his defense. The trial court's failure to order a competency hearing pursuant to section 1368 deprived Ary of his constitutional right to a fair trial. The matter is remanded to permit the trial court to consider, if the prosecution elects to so request, whether a retrospective competency hearing can be held.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Just before midnight on August 14, 1997, Ronnie Ortega, a native of Guatemala who worked as a chef at San Pablo Casino, was shot and killed while stopped at a stoplight at an intersection just off San Pablo Avenue. A witness to the shooting saw two teenagers at a bus stop near the intersection. He saw and heard an older man across the street from the teenagers yelling to them that he "wanted to get a Cadillac." The witness identified defendant as

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

the older man he saw. He also identified defendant as the person who shot Ronnie Ortega at the stoplight.

Several days after the murder, acting on tips received, the police interviewed a 15-year-old named Darius Mason. Mason told the police that defendant shot Ortega. Mason said he and a friend, Worsten Andrews, had talked to defendant about getting a car to do some robberies, but that they had merely witnessed Ortega's shooting.

On August 17, police officers arrested defendant. Andrews was also arrested. In an interview with the police, Andrews, like Mason, also said that defendant was the person who shot Ortega. Andrews explained that he, Mason and defendant planned to commit a carjacking and as they were walking, defendant became separated from them. When Ortega's car pulled up at a traffic light, defendant went to the side of the car and shot at it.

Defendant subsequently waived his *Miranda* rights and confessed to Ortega's murder. In July and August 1999, the court held two hearings on a motion to suppress defendant's confession. Defendant contended he had not knowingly and voluntarily waived his *Miranda* rights and that his confession was coerced. The matter was then continued for a lengthy period of time and, in April, May and June 2000, the court heard the remainder of the evidence regarding whether defendant's waiver was valid and his confession voluntary. At these hearings, which consumed the majority of seven court days, the trial court was presented with extensive testimony regarding defendant's mental retardation.

At the conclusion of these hearings, the trial court found defendant's waiver of his *Miranda* rights was knowing and voluntary. However, the court found that defendant's confession was not voluntary and suppressed evidence of it. The trial court explained its ruling: "When you put that altogether, given this defendant's cognitive ability—Believe me, he knew what he was doing in waiving his rights. I have no problem with that. He ain't the brightest bulb either. He definitely has some deficits. I think that in conjunction with the way [the police officers] did this interview, put it in such a scenario that he had no choice but to shut up, get the worst-case scenario which was going to be premeditated murder or to say something. He elected to say something. [¶] I find that the statement he gave was coerced. It is improper and cannot be used for any purpose . . . ."

A jury trial commenced on September 13, 2000. On December 11, 2000, the jury found defendant guilty of first degree murder, carjacking, robbery and of being a felon in possession of a firearm. The jury found true three special circumstances and a firearm use allegation. Defendant was acquitted of two counts involving a separate attempted carjacking incident.

The prosecution sought the death penalty. The jury deadlocked in the penalty phase and, on January 24, 2001, the court declared a mistrial. The prosecution elected not to retry the penalty phase. On June 14, 2001, the trial court sentenced defendant to life without parole and imposed a consecutive, determinate sentence of 16 years and four months.

This timely appeal followed.

## III. DISCUSSION

### A. *Competency Hearing*

Defendant contends he was denied due process under *Pate v. Robinson* (1966) 383 U.S. 375, 377 [15 L.Ed.2d 815, 86 S.Ct. 836] (*Pate*) and *People v. Pennington* (1967) 66 Cal.2d 508 [58 Cal.Rptr. 374, 426 P.2d 942] (*Pennington*), because the trial court did not order a competency hearing despite substantial evidence that, due to his mental retardation, he was incapable of understanding the nature of the proceedings against him and of assisting in his defense. We agree.

"It has long been established that the conviction of an accused person while he is legally incompetent violates due process. (*Pate, supra,* 383 U.S. at p. 377.) Indeed, the United States Supreme Court has held that the failure of a trial court to employ procedures to protect against trial of an incompetent defendant deprives the defendant of his due process right to a fair trial and requires reversal of his conviction. (*Ibid.; Drope v. Missouri* (1975) 420 U.S. 162, 171 [43 L.Ed.2d 103, 95 S.Ct. 896].)" (*People v. Hale* (1988) 44 Cal.3d 531, 539 [244 Cal.Rptr. 114, 749 P.2d 769], fn. omitted.) These constitutional protections are codified in sections 1367 et seq.

Section 1367, subdivision (a), provides that a defendant is mentally incompetent to stand trial when, "as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational matter." Mental retardation is defined as a developmental disability. (§ 1370.1, subd. (a)(1)(H).) A court is required to hold a competency hearing when substantial evidence of the accused's incompetence has been introduced. (*People v. Stankewitz* (1982) 32 Cal.3d 80, 91–92 [184 Cal.Rptr. 611, 648 P.2d 578]; *People v. Laudermilk* (1967) 67 Cal.2d 272, 283 [61 Cal.Rptr. 644, 431 P.2d 228].) Evidence is substantial if it raises a reasonable doubt as to the defendant's competence to stand trial. (§ 1368; *People v. Jones* (1991) 53 Cal.3d 1115, 1152 [282 Cal.Rptr. 465, 811 P.2d 757].)

Once the evidence raises such a reasonable doubt, the trial court is required to, "on its own motion, suspend proceedings in the case until the question is

determined in a sanity hearing." (*People v. Tomas* (1977) 74 Cal.App.3d 75, 88 [141 Cal.Rptr. 453].) The consequence of the court's failure to order such a hearing in the face of such substantial evidence is severe: "Under section 1368 of the Penal Code the trial court has no power to proceed with the trial once a doubt arises as to the sanity of the defendant. In trying defendant without first determining at a hearing his competence to stand trial, the court both denie[s] to defendant a substantial right [citations] and pronounce[s] judgment on him without jurisdiction to do so. In such cases the error is *per se* prejudicial." (*Pennington, supra,* 66 Cal.2d at p. 521.) "Indeed, once a doubt has arisen as to the competence of the defendant to stand trial, the trial court has no jurisdiction to proceed with the case against the defendant without first determining his competence in a section 1368 hearing, and the matter cannot be waived by defendant or his counsel. (*Pennington, supra,* 66 Cal.2d at p. 518; *In re Davis* (1973) 8 Cal.3d 798, 808 [106 Cal.Rptr. 178, 505 P.2d 1018].)" (*People v. Hale, supra,* 44 Cal.3d at p. 541; see also *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 69 [2 Cal.Rptr.2d 389, 820 P.2d 613] (*Marks*).)

Importantly, we are not deciding here whether defendant is, in fact, competent to stand trial, but whether there was evidence sufficient to raise a reasonable doubt as to defendant's competence to stand trial. We conclude there was.

A significant pretrial issue in this matter was whether defendant knowingly and voluntarily waived his *Miranda* rights and whether his subsequent confession to Ortega's murder was voluntary. The defense contended that defendant's mental retardation made him incapable of understanding his rights and made the tactics used during his interrogation coercive.

During the pretrial proceedings on this issue, Dr. Timothy Derning, a forensic psychologist and expert in neurocognitive deficits related to intellectual functioning, testified for the defense. Based on information about defendant's family and education, interviews with defendant and the results of a variety of psychological tests, Derning concluded that defendant had a "severe mental impairment" that met the American Psychiatric Association's diagnostic criteria for mild mental retardation.

According to Derning, there are three diagnostic criteria for mental retardation: (1) sub-average intellectual functioning measured by an IQ score of approximately 70 or less; (2) an accompanying deficit in at least two out of 10 listed areas of adaptive functioning; and (3) the onset of both before the age of 18. Dr. Derning pointed out that "mild" retardation is a misnomer and does not indicate a mild mental impairment. Rather, mild mental retardation is found in the lowest two percent of the general population and involves a "significant deficit."

Derning testified that defendant's standard scores on three cognitive assessment tests indicated that he had IQ's of 45, 58 and 59. Defendant's intellectual proficiency was "very limited" and the demands of intellectual functioning were "extremely difficult" for him. For example, defendant scored a "beginning of kindergarten" level for name memory and visual matching. In addition, defendant's "functional academic skills are quite limited and very poor . . . ." On each of these tests, defendant's scores were below those of people in the lowest first percentile of the population. Other tests of defendant conducted in 1994 and 1996 were consistent with these results.

Defendant was in a special education curriculum in high school. One of his special education teachers reported that she believed defendant to be mentally retarded. Defendant's sister reported that he had trouble getting on the bus or driving and it was difficult for him to pay bills. She did not think he could read an exit sign to get off a highway or follow directions. He was not capable of functioning independently, because he could not sign a contract for an apartment, or pay his own bills.

Dr. Derning testified that he had no doubt defendant was mentally retarded. He was also certain defendant was not malingering.

Dr. John Podboy, who testified as an expert in clinical psychology with an emphasis on development disability, including mental retardation, stated he believed defendant was not mentally competent to understand and waive his *Miranda* rights. Dr. Podboy described defendant as "an individual who has exhibited over and over again difficulties in understanding any one of a number of different things, such as how to use a telephone. How to count change. How to go to a store and make purchases. We're talking about very primitive functioning." Dr. Podboy testified that he had reviewed psychological examinations of defendant prepared by Drs. O'Meara, Riley and Derning. He noted that Dr. O'Meara's report indicated defendant did not understand what people said, asked questions that seemed odd, was not able to follow a topic of discussion and said things no one else understood.

Dr. Paul Berg, an expert psychologist for the prosecution, conceded that defendant was "mildly mentally retarded."

In light of this extensive expert testimony on defendant's mental functioning, we conclude there was substantial evidence before the trial court that defendant suffered from mental retardation.

■ We must also consider whether, due to his mental retardation, defendant had " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and had 'a rational as well as factual

understanding of the proceedings against him.' " (*Godinez v. Moran* (1993) 509 U.S. 389, 396 [125 L.Ed.2d 321, 113 S.Ct. 2680], quoting *Dusky v. United States* (1960) 362 U.S. 402 [4 L.Ed.2d 824, 80 S.Ct. 788] (*Dusky*).) We have reviewed the record and conclude it contains substantial evidence that, as a result of his mental retardation, defendant did not have a rational or factual understanding of the proceedings against him and did not have the ability to consult with his lawyer with a reasonable degree of rational understanding.

In an assessment of defendant prepared in March 1999, Dr. Derning wrote that, although he had been meeting with defendant for a year, defendant "couldn't remember what I did or how I fit into his case." Dr. Derning concluded that defendant "did not understand [what] a legal defense is, nor how the CJ [criminal justice] system works. He did not know his options. This is a consequence of his mental retardation. He doesn't understand the judge's role except as sentencer. He does not know anything about the jury."

Dr. Derning also testified about open-ended questions he asked defendant in order to assess defendant's understanding of his legal rights and the jury system in order to determine whether defendant's waiver of his *Miranda* rights was knowing and voluntary. In the course of testifying about this issue, Dr. Derning testified that defendant, in general, did not have any understanding that there would, potentially, be a jury involved in deciding his case.

At a hearing held before trial to consider a motion to strike Ary's prior conviction on the ground that he did not voluntarily enter a guilty plea, Ary testified he did not know what a felony or misdemeanor was. He did not know what a preliminary hearing was and could not explain its purpose. He did not understand he had a right to call witnesses or have his attorney ask them questions at the preliminary hearing in this matter. Although his attorneys had tried to explain the meaning of a trial to him, his understanding of the concept was: "To me it means whereas when the trial comes up, that mean everything comes on the table. That's what it mean to me." Finally, defense counsel noted in a memorandum that defendant could not remember his past well enough to help his lawyers find witnesses who knew him. This evidence, together with the general evidence of defendant's mental retardation is, as a matter of law, substantial evidence that he was not competent to stand trial.

Citing *Atkins v. Virginia* (2002) 536 U.S. 304 [153 L.Ed.2d 335, 122 S.Ct. 2242], the People contend that mental retardation is not synonymous with incompetency and evidence of mental retardation alone does not trigger the

need to hold a competency hearing under section 1368.[2] The People correctly point out that no expert concluded defendant was incompetent to stand trial and no expert suggested his mental retardation standing alone rendered him incompetent. We need not decide, however, whether mental retardation, taken alone, is substantial evidence of incompetence because the record also contains substantial evidence that, due to his mental retardation, defendant lacked an understanding of the nature of the criminal proceedings against him and was unable to assist his counsel in his defense.

We reject the People's suggestion that substantial evidence of incompetence must be established by an expert who specifically testifies that the defendant, due to mental retardation, is not competent to stand trial. It is quite clear that, although such testimony can certainly constitute substantial evidence (see *People v. Castro* (2000) 78 Cal.App.4th 1402, 1417 [93 Cal.Rptr.2d 770] [expert testimony that mentally retarded defendant incompetent to stand trial]), it is not required. Indeed, this argument was rejected in *Drope v. Missouri, supra,* 420 U.S. at page 180. There, the court held, "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors standing alone, may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." (See also *People v. Laudermilk, supra,* 67 Cal.2d at p. 283 ["the question as to what constitutes such substantial evidence . . . 'cannot be answered by a simple formula applicable to all situations.' "].)

The People also discuss, at great length, evidence in the record of defendant's competence and suggest this evidence of competence undermines defendant's argument that the record contains substantial evidence of incompetence. While the evidence cited by the People may be meaningful at a competency hearing, it is quite clear that once substantial evidence of incompetence appears, the court is required to order a hearing, " 'no matter how persuasive other evidence—testimony of prosecution witnesses or the court's own observations of the accused—may be to the contrary. . . . [¶] [W]hen defendant has come forward with substantial evidence of present mental incompetence, he is entitled to a section 1368 hearing as a matter of

---

[2] We note, however, that in holding that the execution of mentally retarded criminals violates the Eighth Amendment, the *Atkins* court specifically relied on the fact that "some characteristics of mental retardation undermine the strength of the procedural protections that our capital jurisprudence steadfastly guards." (*Atkins v. Virginia, supra,* 536 U.S. at p. 317.) The court observed that "mentally retarded defendants may be less able to give meaningful assistance to their counsel" (*id.* at p. 320), and "in the aggregate face a special risk of wrongful execution." (*Id.* at p. 321.)

right *. . . .* The judge then has no discretion to exercise.' " (*People v. Hale, supra,* 44 Cal.3d at p. 539, quoting *Pennington, supra,* 66 Cal.2d at p. 518, italics omitted.) Having found that such substantial evidence exists, we conclude that evidence to the contrary is of no moment. The inquiry into the persuasiveness and weight to be given the substantial evidence of defendant's competence is made at the competency hearing, not at this point.

The People also contend that, because the trial court ruled defendant made a knowing and voluntary waiver of his *Miranda* rights in 1997, this court may not find substantial evidence of his incompetence to stand trial. We do not agree. When the trial court made this determination, it did so after weighing conflicting evidence regarding defendant's understanding of his *Miranda* rights. The substantial evidence standard we must apply, however, does not permit us to weigh conflicting evidence. As the *Hale* court made clear, once a court finds substantial evidence of mental incompetence, contrary evidence will not alter this conclusion. (See also *People v. Stankewitz, supra,* 32 Cal.3d at pp. 92–93.)

Finally, the People correctly note that defense counsel stated, during the hearing on the voluntariness of defendant's confession, that defendant's competency was "not the issue" at that hearing. In any other context, this statement and defense counsel's failure to raise the issue might constitute invited error. However, this error cannot be waived by counsel's failure to raise it. (*People v. Hale, supra,* 44 Cal.3d at p. 541.) The trial court had a duty to order a competency hearing in the face of substantial evidence of defendant's incompetence. Its failure to do so is per se prejudicial. (*Pennington, supra,* 66 Cal.2d at p. 521.)

## B. *Retrospective Competency Hearing*

This court requested supplemental briefing on the question of whether the due process error in this case may be cured through a retrospective competency hearing, a procedure sanctioned by the federal courts under certain limited circumstances. (*Odle v. Woodford* (9th Cir. 2001) 238 F.3d 1084, 1089 (*Odle*).) The People urge us to adopt this procedure. Defendant, on the other hand, argues that *Pennington, supra,* 66 Cal.2d at page 521, forecloses the possibility of such hearings and, therefore, the only course available to us is to reverse the judgment in its entirety.

We conclude that *Pennington* does not definitively answer this question and, moreover, the weight of the relevant authority suggests retrospective competency hearings may, in certain circumstances, be permissible.

We begin our analysis of this issue with *Pate, supra,* 383 U.S. 375, which announced the constitutional principle that the trial of an incompetent defendant deprives the defendant of his due process right to a fair trial. In *Pate,* the

court held that a defendant with a "history of pronounced irrational behavior" (*id.* at p. 386) was denied this constitutional right by the court's failure to conduct a hearing on the issue of defendant's competence to stand trial. (*Ibid.*) The *Pate* court then considered whether it would be sufficient for the state court to "hold a limited hearing as to [defendant's] mental competence at the time he was tried . . . ." (*Id.* at p. 387.) Citing its earlier decision in *Dusky, supra,* 362 U.S. 402,[3] the court rejected this possibility: "[W]e have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial. [Citation.] The jury would not be able to observe the subject of their inquiry, and expert witnesses would have to testify solely from information contained in the printed record. That [defendant's] hearing would be held six years after the fact aggravates these difficulties." (*Pate, supra,* 383 U.S. at p. 387.) The *Pate* court, however, did not foreclose the possibility of such a hearing; rather it held that, under the circumstances before it, such a retrospective hearing would not be possible.

In *Pennington, supra,* 66 Cal.2d at page 521, our Supreme Court, following *Pate,* found the failure to hold a competency hearing "*per se* prejudicial." In considering the appropriate remedy, the court stated, "Nor, as the United States Supreme Court specifically held in *Pate v. Robinson, supra,* 383 U.S. 375, 387, may the error be cured by a retrospective determination of defendant's mental competence during his trial." It is this language on which defendant relies in asserting that it is well established under California law that the failure to hold a competency hearing may *never* be cured by holding such a hearing retrospectively. We do not agree that either *Pate* or *Pennington* settles this question, as defendant suggests. *Pate,* for example, speaks in terms of the "difficulty" of curing this error retrospectively because of practical evidentiary problems that might occur due to the lapse of time, a discussion suggesting that, in some circumstances, such a hearing might be appropriate. Nor does *Pennington* rule this possibility out. Rather, the *Pennington* court did nothing more than repeat the *Pate* court's conclusion— that a retrospective determination of competency would not, *in that particular case,* cure the due process error. Therefore, neither case stands for the proposition that, under no circumstances, may a retrospective competency hearing be held.

---

[3] In *Dusky,* the court, in a brief *per curiam* opinion, articulated the test for determining competence to stand trial as whether the "defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." (*Dusky, supra,* 362 U.S. 402.) The *Dusky* court reversed the judgment in its entirety, rather than ordering a retrospective evaluation of defendant's competence, "[i]n view of the doubts and ambiguities regarding the legal significance of the psychiatric testimony in this case and the resulting difficulties of retrospectively determining the petitioner's competency as of more than a year ago." (*Id.* at p. 403.)

After *Pennington* was decided, the United States Supreme Court, in *Drope v. Missouri, supra,* 420 U.S. at page 183, made quite clear that such a procedure is permissible, although inherently difficult.[4] Following *Drope v. Missouri,* the United States Court of Appeals for the Ninth Circuit permitted retrospective determinations of competence to plead guilty and waive counsel, so long as "the circumstances surrounding the case permit a fair retrospective determination of the defendant's competency at the time of trial." (*De Kaplany v. Enomoto* (9th Cir. 1976) 540 F.2d 975, p. 986, fn. 11; see also *Evans v. Raines* (9th Cir. 1986) 800 F.2d 884, 885–887 [retroactive determination of defendant's competence to waive counsel]; *Miles v. Stainer* (9th Cir. 1997) 108 F.3d 1109, 1114 [competence to plead guilty].) In *Odle, supra,* 238 F.3d 1084, the Ninth Circuit specifically held that a California trial court could cure its failure to hold a hearing on the defendant's competence to stand trial by conducting a retrospective hearing: "We have said that retrospective competency hearings may be held when the record contains sufficient information upon which to base a reasonable psychiatric judgment." (*Id.* at p. 1089.) In *Odle,* the court remanded the matter to the trial court for a determination of whether such a hearing could be held, in light of the 20-year passage of time and the available evidence of defendant's psychiatric condition at the time of the original trial. (*Ibid.*)

The California Supreme Court has not directly addressed this issue.[5] However, the court has recognized that the United States Supreme Court has found retrospective competency hearings "constitutionally adequate." In *Marks, supra,* 1 Cal.4th at page 67, the court observed that, "while in *Pate v. Robinson[, supra,]* 383 U.S. 375, 387 . . . , the court emphasized 'the difficulty of retrospectively determining an accused's competence to stand trial . . . ,' in *Drope v. Missouri* (1975) 420 U.S. 162, 182–183 [43 L.Ed.2d 103, 95 S.Ct. 896], it accepted the possibility of a constitutionally adequate posttrial or even postappeal evaluation of the defendant's pretrial competence." Although the issue before the *Marks* court was whether the retrial of the defendant was barred by double jeopardy, this language nevertheless suggests an acceptance of what has long been the position of the federal courts. Similarly, in *People v. Castro* (2000) 78 Cal.App.4th 1402, 1419–1420 [93 Cal.Rptr.2d 770], the Court of Appeal observed that "the California Supreme Court has adopted the view that the United States Supreme Court

---

[4] The *Drope* court notes that "The question remains whether petitioner's due process rights would be adequately protected by remanding the case now for a psychiatric examination aimed at establishing whether petitioner was in fact competent to stand trial in 1969. Given the inherent difficulties of such a *nunc pro tunc* determination under the most favorable circumstances, see *Pate v. Robinson,* 383 U.S., at 386–387; *Dusky v. United States,* 362 U.S., at 403, we cannot conclude that such a procedure would be adequate here." (*Drope v. Missouri, supra,* 420 U.S. at p. 183.)

[5] In *People v. Stanley* (1995) 10 Cal.4th 764, 818 [42 Cal.Rptr.2d 543, 897 P.2d 481], the court expressly declined to reach this issue.

'accept[s] the possibility of a constitutionally adequate posttrial or even postappeal evaluation of the defendant's pretrial competence.' [Citation.]" (*People v. Castro, supra,* 78 Cal.App.4th at p. 1419.) Although the *Castro* court concluded such a procedure would not suffice in the circumstances before it, it acknowledged that, under other circumstances, a retrospective determination of competency may be ordered.

Defendant however, points out that, in *Marks,* the court also affirmed that the failure to hold a competency hearing in light of substantial evidence of incompetence " 'require[s] reversal without regard to the facts or circumstances of the particular case.' " (*Marks, supra,* 1 Cal.4th at pp. 69–70.) Defendant suggests that this language prohibits a retrospective competency hearing. We do not agree. While it is certainly the case that the trial court's error in failing to hold a competency hearing when one is warranted is not subject to harmless error review, this does not mean that the procedural due process violation can never be cured retrospectively, under appropriate circumstances, as the United States Supreme Court has suggested.

Since *Pate* was decided, several federal courts have, in limited circumstances, cured this due process error by directing trial courts to consider the possibility of holding retrospective competency hearings. (See *Odle, supra,* 238 F.3d at p. 1089; *United States v. Mason* (4th Cir. 1995) 52 F.3d 1286, 1293; *United States v. Renfroe* (3rd Cir. 1987) 825 F.2d 763, 767–768; *United States v. Johns* (7th Cir. 1984) 728 F.2d 953, 957–958; *Martin v. Estelle* (5th Cir. 1977) 546 F.2d 177, 180.) The *Odle* court, for example, after concluding the trial court had erred by not holding a competency hearing, remanded the matter to the California trial court with instructions to determine whether "the record contains sufficient information upon which to base a reasonable psychiatric judgment" of defendant's competence to stand trial. (*Odle, supra,* 238 F.3d at p. 1089.)

We emphasize, however, that it is the rare case in which a meaningful retrospective competency determination will be possible. The inherent difficulty of such a determination, of course, is that there will seldom be sufficient evidence of a defendant's mental state at the time of trial on which to base a subsequent competency determination. (*Drope v. Missouri, supra,* 420 U.S. at p. 183.) This is because a trial court's initial failure to hold a timely competency hearing is almost always rooted in a fundamental inattentiveness to the defendant's mental condition. The record in such cases will, therefore, seldom contain useful contemporaneous information regarding a defendant's mental state at the time of trial and his ability, at that time, to understand the nature of the proceedings and assist in his defense. For this reason, courts have declined to permit a retrospective competency hearing after reversing a conviction because of the failure to hold such a hearing originally. (*People v. Castro, supra,* 78 Cal.App.4th at pp. 1419–1420.)

It is only because of the highly unusual nature of this case that we remand this matter to the trial court for a determination as to whether such a hearing is possible. During `pretrial hearings held in 1999 and 2000 on defendant's competence to waive his *Miranda* rights and the voluntariness of his confession, extensive expert testimony and evidence was proffered regarding defendant's mental retardation and his ability to function in the legal arena. Much of this information would be relevant in a competency hearing. Although we could remand this matter and order a competency hearing to be held, we instead take the additional step of directing the trial court to determine whether the available evidence and witnesses are sufficient to permit it to reach a "reasonable psychiatric judgment" of defendant's competence to stand trial. (*Odle, supra,* 238 F.3d at p. 1089.) Pertinent to, but not necessarily determinative of, this issue is whether the experts who examined defendant in 1999 and 2000 are available and able to render an opinion about defendant's competence to stand trial in 1999 and 2000. On remand, therefore, the People will have the burden of establishing that a retrospective competency hearing can be held.

In a petition for rehearing, defendant urges us to impose a "beyond a reasonable doubt" standard of evidentiary proof on the People as to this threshold matter. We decline to do so. In other jurisdictions in which trial courts have undertaken the task of determining whether a retrospective competency hearing can be held, the court's decision has been viewed as a threshold legal determination, subject to the abuse of discretion standard of review. (See, e.g., *United States v. Renfroe* (D.Del. 1988) 678 F.Supp. 76, 78 [decision on whether a retrospective competency hearing can be held is "a legal inquiry which 'the court must make for itself' "]; *Bolius v. Wainwright* (5th Cir. 1979) 597 F.2d 986, 988 [trial court's determination of whether to hold retrospective competency hearing is a matter "left to the discretion of the trial court in each case, subject to appellate review"].)

■ Although the trial court will be required to evaluate factual questions such as whether witnesses and evidence are available, the issue of whether there is sufficient evidence available upon which to base a retrospective competency determination is not primarily a factual matter. Indeed, a court of appeal may make this determination based purely on the record before it. (*People v. Castro, supra,* 78 Cal.App.4th at pp. 1419–1420.)Therefore, imposing a standard of evidentiary proof would not be particularly relevant or helpful. We reiterate, however, that in those rare circumstances in which an appellate court remands for a determination of whether such a hearing can be held, the People must still convince the trial court that there is sufficient evidence on which a "reasonable psychiatric judgment" of defendant's competence to stand trial can be reached. (*Odle, supra,* 238 F.3d at p. 1089.)

## IV. DISPOSITION

We remand the case to the trial court with instructions to determine within sixty days, in a manner not inconsistent with this opinion, whether a retrospective competency hearing can be held. In the event such a hearing is held and defendant is found to have been competent to stand trial, we will consider the remaining issues raised in this appeal. In the event defendant is found to have been incompetent to stand trial, the judgment shall be reversed.

Kline, P. J., and Lambden, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 18, 2004. Chin, J., did not participate therein.