Filed 3/13/13  P. v. Rodriguez-Cintron CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B238807 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA081445) |
| v. | |
| MICHAEL ANGEL RODRIGUEZ-CINTRON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Darrell S. Mavis, Judge.  Affirmed.

Maggie Shrout, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Lawrence M. Daniels and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

# INTRODUCTION

Defendant Michael Angel Rodriguez-Cintron appeals from a judgment entered following a jury trial. Defendant was convicted of possession of a flammable liquid (Pen. Code,[1] § 453, subd. (a); count 1) and attempted arson (§ 455; count 2).

After the verdicts, but before sentencing, defense counsel declared a doubt on defendant's mental capacity and section 1368 proceedings were instituted. Dr. Barry Hirsch concluded defendant was mentally competent to continue with his trial. Dr. Haig Kojian concluded defendant was severely mentally impaired and struggled with a psychotic mental process and a delusional belief system. In another report, Dr. Kojian concluded that defendant was incompetent to stand trial.

Patton State Hospital recommended defendant's retention for mental health treatment, and the trial court concurred with the recommendation. Defendant was ordered to Patton State Hospital on August 18, 2011. On December 5, 2011, Patton State Hospital recommended that he was ready to be returned to court as competent and proceed to sentencing. On January 18, 2012, he was sentenced to the midterm of two years on the attempted arson, and the sentence for possession of a flammable liquid was stayed pursuant to section 654.

# FACTS

## A. *Prosecution*

### 1. September 2, 2010

Defendant was part of a group touring the Warner Bros. Studios lot in Burbank. Near the end of the tour, studio guide Sheryl McDonald noticed that defendant seemed to be agitated and tense. According to McDonald, defendant stated "that I should read his book that he's writing and that he had just seen Joel Silver and that he was certain that

---

[1] All further statutory references are to the Penal Code.

Joel Silver knew that he was going to be at the museum at that time." Defendant eventually calmed down during this conversation.

### 2. September 17, 2010

On the afternoon of September 17, 2010, defendant rammed the security gate of the Warner Bros. Studios lot with his Chevrolet Camaro. Once inside the lot, defendant drove to a building on the lot labeled, "Producers l." He poured a bottle of charcoal lighter fluid on the length of the driver's side of a black Lexus parked outside the building. Defendant left the lighter fluid bottle on the vehicle's windshield.

Security guard Andrew Burkot stopped defendant on the lot after seeing defendant run three stop signs and drive above the maximum speed limit. Burkot asked defendant if he had proper credentials to be on the lot, and defendant responded that he did not. After Burkot told defendant he had to return to the security gate and was trespassing, defendant drove back to the security gate.

Security guard Max Plasencia stopped defendant as he was attempting to drive out of the lot. Defendant showed Plasencia his identification and, at Plasencia's direction, moved his car to the side of the exit gate and waited. Defendant was not authorized to be on the lot. While waiting, defendant was seen moving a duffle bag from the passenger compartment of his car into the trunk. When the police arrived, they searched his car and found seven bundles of matches, as well as several cloth strips. In the duffle bag that he moved to the trunk, police discovered five containers of lighter fluid, a replica handgun, a gasoline container, and a hammer. During a booking search, a bundle of several matches was discovered in defendant's left front pants pocket.

Plasencia's supervisor, Thomas Gillespie, asked defendant why he had broken through the security gate arm. Defendant indicated that he thought he was waved through and he had a meeting with Joel Silver.

Edward Nordskog, a detective assigned to the Los Angeles County Sheriff's Department arson and explosives detail, opined that the cloth strips, like those recovered from defendant's Camaro, were consistent with wicks used as a component of an

incendiary device.  Detective Nordskog's opinion was that bundles of matches, like those recovered from defendant's Camaro, indicated that a significant flame or fire was intended.  Based on hypotheticals, Detective Nordskog opined that the items in the duffle bag and Camaro were components of multiple incendiary devices and that defendant was in possession of an incendiary device.  Detective Nordskog believed that the collection of materials and the act of dousing a car with lighter fluid evidenced an intent to start multiple fires.

## B.  *Defense Evidence*

Defendant testified that he was employed as a creative consultant, a business consultant, and an "advisor."  As a creative consultant, he worked on the following motion pictures: the "Matrix" trilogy; "Inception;" "Shutter Island;" and "Departed."  Defendant testified that he and Joel Silver worked together on several movie productions.  Silver was the executive producer of the "Matrix" trilogy.  After defendant entered the studio lot, he drove around in an effort to find Joel Silver's office.  He was in the process of doing that when flagged down by a security officer.  The matches and lighter fluid were for camping.  He denied pouring lighter fluid on any vehicle.

## DISCUSSION

Defendant contends he was entitled to a section 1368 hearing before the trial started, and because he was not declared incompetent to stand trial until after his trial, his due process rights were violated.  We disagree.

"A person cannot be tried or adjudged to punishment while that person is mentally incompetent."  (§ 1367, subd. (a); see also *Drope v. Missouri* (1975) 420 U.S. 162, 172 [95 S.Ct. 896, 43 L.Ed.2d 103].)  The right to be mentally competent before standing trial is protected by both federal due process and state law.  (*People v. Rogers* (2006) 39 Cal.4th 826, 846-847.)  Trial of a mentally incompetent defendant is jurisdictional error that is prejudicial per se and cannot be waived by the defendant.  (*People v. Pennington*

4

(1967) 66 Cal.2d 508, 521; *People v. Ary* (2004) 118 Cal.App.4th 1016, 1021, 1025; *People v. Castro* (2000) 78 Cal.App.4th 1402, 1416, disapproved on another ground in *People v. Leonard* (2007) 40 Cal.4th 1370, 1391, fn. 3.) If at any time during a criminal prosecution the trial judge feels doubt as to a defendant's mental competence to stand trial and defense counsel confirms that doubt, or if at any time the defendant presents substantial evidence that raises a reasonable doubt as to his competence, the court must stop the proceedings and order a competency hearing. (§ 1368; *People v. Ramos* (2004) 34 Cal.4th 494, 507; see also *People v. Frye* (1998) 18 Cal.4th 894, 951-952 ["As a matter of due process, the trial court is required to conduct a section 1368 hearing to determine a defendant's competency whenever substantial evidence of incompetence has been introduced."], disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

A defendant is mentally incompetent if, "as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner" (§ 1367, subd. (a)) or lacks a sufficient present ability to consult rationally with his lawyer with a reasonable rational and factual understanding of the proceedings against him. (*People v. Ramos*, *supra*, 34 Cal.4th at p. 507; see also *People v. Welch* (1999) 20 Cal.4th 701, 737.)

Defendant relies on *People v. Murdoch* (2011) 194 Cal.App.4th 230 to support his position the trial court should have ordered a competency hearing, claiming *Murdoch* is similar to his case. In *Murdoch*, the defendant was convicted of assault with a deadly weapon and battery with serious bodily injury. After his arraignment, competency proceedings were instituted, and the trial court appointed two experts to examine him. (*Id.* at p. 233.) Both experts concluded the defendant suffered from serious or severe mental illness. He was competent as long as he continued taking prescription medication, but he had already stopped taking his medication. (*Ibid.*) Prior to the taking of evidence at trial, the defendant told the trial court his defense was that "the victim is not a human being. According to [the] defendant, the victim lacked shoulder blades, which 'are symbolic of angelic beings.'" (*Ibid.*) The court reinstituted the criminal proceedings and

5

granted a subsequent request from the defendant to represent himself. (*Id.* at p. 234.) At trial, prior to opening statements, the defendant again advised the court his defense was going to be that the witnesses were not human. (*Ibid.*) At trial, the defendant cross-examined only one witness and asked a single question relating to his theory that the victim was not human—whether he could shrug his shoulders. (*Id.* at p. 235.) The reviewing court acknowledged that although deference is given to the trial court, because the appellate court is generally """"in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper"""" (*People v. Marshall* (1997) 15 Cal.4th 1, 33) in this case it was "readily apparent" that the defendant was not feigning insanity in order to delay the proceeding (*Murdoch*, *supra*, at p. 239). *Murdoch* rightfully concluded the expert evidence coupled with the defendant's behavior should have prompted the trial court to raise a doubt about defendant's competence during trial. (*Id.* at p. 238.)

The facts in the instant case are distinguishable. There was no psychiatric information before the trial court prior to sentencing indicating that defendant did not understand the proceedings. Defendant was not representing himself. Defense counsel did not declare a doubt as to defendant's competency during pretrial proceedings or during the trial. There was no display of completely delusional or irrational thinking as in the *Murdoch* case. Defendant felt that Joel Silver, a movie producer, had slighted him. Apparently seeking revenge against Silver, defendant rammed the security gate at the Warner Bros. Studios lot and attempted to ignite what he believed was the car belonging to Silver. During the trial, while denying the offenses, he rationally gave innocent reasons for possessing the components of incendiary devices.

It is true that Dr. Kojian stated that defendant "should have been considered incompetent to stand trial at the time he provided testimony in this case as his defense is based on an irrational, grandiose, and delusional belief system . . . . It is clear he was incompetent to stand trial in that condition . . . ." However, Dr. Hirsch reached an opposite conclusion. "A trial court's decision whether or not to hold a competence hearing is entitled to deference, because the court has the opportunity to observe the

6

defendant during trial." (*People v. Rogers*, *supra*, 39 Cal.4th at p. 847.) As the court in *Murdoch* recognized, "'"[a]n appellate court is [generally] in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper."' [Citations.]" (*People v. Marshall*, *supra*, 15 Cal.4th at p. 33; accord, *People v. Murdoch*, *supra*, 194 Cal.App.4th at p. 239.) It is significant that defendant's trial counsel did not seek a hearing on defendant's competence during trial. "Although trial counsel's failure to seek a competency hearing is not determinative [citation], it is significant because trial counsel interacts with the defendant on a daily basis and is in the best position to evaluate whether the defendant is able to participate meaningfully in the proceedings [citation]." (*Rogers*, *supra*, at p. 848.)

The facts in the instant case are similar to *People v. Lewis* (2008) 43 Cal.4th 415. In *Lewis*, the Supreme Court concluded that the defendant's outbursts at the beginning of the penalty phase did not constitute substantial evidence that the defendant was incompetent to stand trial. The court, in declining to suspend proceedings and conduct a competency hearing, did not violate the defendant's state statutory rights under sections 1367 and 1368, or his federal constitutional right to due process of law. The defendant contended that he exhibited behavior during trial that called his competency into question — he made statements in front of the jury that he had been involved in an uncharged murder, and during the testimony of a prosecution witness, he made several outbursts, such as exclaiming: "'This bitch guilty of murder. She is just as guilty of murder just like me, so it ain't no big deal.'" (*Lewis*, *supra*, at p. 523.) When the court suggested that the trial counsel talk to his client and "'tell [him] at length that [his] outbursts may have an adverse effect on the jury,'" the defendant told the court, "'Charge me to another crime. One more don't make no difference.'" (*Ibid*.) Because of these outbursts, the defense counsel argued that "[the] defendant was not competent to understand the gravity of the proceedings, to control himself, or to assist counsel." (*Ibid*.)

In *Lewis*, the Supreme Court deferred to the trial court, which made its decision after observing the defendant's "behavior and demeanor at trial. The court observed that [the] defendant was 'perceptive' and able to cooperate with counsel. Nothing in [the]

7

record causes us to doubt the accuracy of the trial court's assessment." (*People v. Lewis*, *supra*, 43 Cal.4th at p. 526.)  Similarly here, nothing in the record before us points to substantial evidence that defendant was incompetent during the trial or not able to assist his counsel.  Giving deference to the trial court, we find that it did not err in failing to declare a doubt as to defendant's competency or institute competency proceedings.

## DISPOSITION

The judgment is affirmed.

JACKSON, J.

We concur:

WOODS, Acting P. J.

ZELON, J.

8