[No. G035385. Fourth Dist., Div. Three. Apr. 4, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
GERALD ARNOLD KAPLAN, Defendant and Appellant.

[redacted]

## COUNSEL

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Ronald A. Jakob and Ivy Fitzpatrick, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FYBEL, J.—**

### INTRODUCTION

Defendant Gerald Arnold Kaplan appeals from a judgment following a jury trial convicting him of attempted murder, felonious assault, false imprisonment by force or violence, and making a criminal threat. At the beginning of the criminal proceedings against defendant, the trial court determined defendant was competent to stand trial within the meaning of Penal Code section 1368. (All further statutory references are to the Penal Code.) Nine months

later, at the beginning of trial and after defendant had jumped from the second tier of the jail, defendant's counsel questioned whether defendant was then competent to stand trial. The trial court concluded there was not sufficient evidence of a substantial change of circumstances or new evidence showing that the court's earlier competency determination was no longer valid. (See *People v. Marshall* (1997) 15 Cal.4th 1, 33 [61 Cal.Rptr.2d 84, 931 P.2d 262].) Defendant argues the trial court erred by failing to conduct a second competency hearing. We agree.

We hold that upon the presentation of substantial evidence showing a substantial change of circumstances or new evidence giving rise to a serious doubt about the validity of the original competency finding, regardless of the presence of conflicting evidence, the trial court must hold a subsequent competency hearing. This substantial evidence standard of proof is the same standard applied by the trial court in determining whether an original competency hearing should be held. (*People v. Rogers* (2006) 39 Cal.4th 826, 846 [48 Cal.Rptr.3d 1, 141 P.3d 135] [trial court must conduct competency hearing when presented with substantial evidence of incompetence even if evidence is in conflict].)

In this case at the beginning of trial, the trial court had been provided an expert's report on defendant's competence to stand trial. In that report, the court was advised defendant's long-standing psychotropic medications had been significantly changed within the two weeks prior to the beginning of trial. The expert stated in her report that, inter alia, as a result of the change in medications, defendant's mental condition had decompensated. The expert further stated in her report that defendant was unable to discuss trial issues at "the relevant level of reasoning" and he could not provide a "meaningful 'recap' " of what had happened in court to date, and that she doubted defendant was capable of listening carefully at trial and writing notes to counsel if witnesses said something he thought was incorrect. The expert's report showed defendant was unable to assist counsel in conducting his defense. The trial court was presented with substantial evidence showing a substantial change in circumstances since the trial court's prior competency determination and such evidence gave rise to a serious doubt about the continuing validity of the original competency finding. Therefore, the trial court was required to conduct a second competency hearing.

As detailed in the disposition, we remand the matter to the trial court to decide whether a retrospective competency hearing should be held to determine defendant's competency at the time of trial in November 2003.

## FACTS[1]

Approximately 11:00 p.m. on June 11, 2002, Marguerite Klumb had driven home to her parents' house and planned on parking her car in the garage, when she noticed a man lying under a van parked across the alley from the garage. She used her cell phone to call her mother, Francoise Klumb, and told her somebody was sleeping underneath a van in the alley. Francoise[2] instructed Marguerite to drive to the front of their residence and pick her up. Marguerite complied and Francoise got into the car. Marguerite took Francoise to observe the man sleeping under the van. Marguerite and Francoise drove by him a couple of times; the last time they drove around, they saw defendant walking away from the van.

Later, Marguerite and Francoise saw defendant inside a nearby laundromat. Francoise got out of the car and went inside the laundromat. Defendant approached Francoise and tackled her to the ground. Defendant strangled her with one arm, and used his fingers to gouge her face, eyes, and mouth. Francoise began to lose consciousness. Marguerite called her father Bruce at home and told him Francoise was in trouble at the laundromat. Bruce ran across the street and into the laundromat. He saw Francoise "on the ground in sort of like a fetal position, like with her back up. The defendant was over her, straddling her. He had his left hand around her neck. In his right hand, he had a belt, which he was holding up in the air." Bruce yelled at defendant, "what are you doing?" Bruce grabbed defendant's right hand, flipped him off Francoise, and restrained him. Defendant did not resist, but said to Bruce, "you better let me up" and "I've got a gun in my left hand. If you don't let me up, I am going to shoot." He then spelled the word "gun." Defendant repeated his threat to shoot Bruce if he did not let defendant get up.

## PROCEDURAL BACKGROUND AND SUMMARY OF EXPERTS' REPORTS

Criminal proceedings were commenced against defendant. Before the preliminary hearing was held,[3] the issue whether defendant was mentally competent within the meaning of section 1368 was raised in the trial court.[4]

---

[1] This brief fact summary is based on trial testimony and is included to provide additional background. The circumstances surrounding defendant's crimes are not relevant to the issue presented in this appeal.

[2] To avoid confusion, and not out of disrespect, we refer to Francoise, Marguerite, and Bruce Klumb by their first names.

[3] Defendant later waived the preliminary hearing.

[4] Section 1368 provides in part, "(a) If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the

In February 2003, after that issue had been submitted to the trial court by the prosecution and the defense, and after hearing had been waived by both sides, the trial court determined, based on reports provided to it by Kaushal Sharma, M.D., and Martha Rogers, Ph.D., that "the defendant is not a mentally incompetent person under Penal Code [section] 1368." The court reinstated the criminal proceedings against defendant.

Dr. Sharma's report, dated January 10, 2003, stated in part, "I believe [defendant] is mentally ill but mentally competent to stand trial. The documents do support a number of past suicidal acts by the defendant and a history of psychiatric treatment of many years duration. However, the documents also support that [defendant] is an antisocially motivated individual, at times engaging in manipulative behavior. [¶] Based on all the available information at this time, I believe [defendant] should be considered competent to stand trial notwithstanding the fact that he is mentally ill and eagerly wants to be confined to Patton State Hospital." In her December 5, 2002 and February 12, 2003 reports, Dr. Rogers also concluded defendant was competent to stand trial. Defendant did not challenge the trial court's February 2003 determination he was competent within the meaning of section 1368.

Defendant was charged in an amended information with (1) attempted murder in violation of sections 664 and 187 (count 1); (2) assault by means of force likely to produce great bodily injury in violation of section 245, subdivision (a)(1) (count 2); (3) false imprisonment by violence in violation of section 236 (count 3); and (4) criminal threats in violation of section 422 (count 4). The information contained an enhancement allegation as to counts 1, 2, and 3, alleging defendant personally inflicted great bodily injury during the commission and attempted commission of those offenses within the meaning of section 12022.7, subdivision (a) and those offenses are serious felonies within the meaning of section 1192.7, subdivision (c)(8). The information also alleged defendant suffered two prior convictions for a

---

defendant, whether, in the opinion of the attorney, the defendant is mentally competent. If the defendant is not represented by counsel, the court shall appoint counsel. At the request of the defendant or his or her counsel or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time. [¶] (b) If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369. If counsel informs the court that he or she believes the defendant is mentally competent, the court may nevertheless order a hearing. Any hearing shall be held in the superior court. [¶] (c) Except as provided in Section 1368.1, when an order for a hearing into the present mental competence of the defendant has been issued, all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined."

violent/serious felony offense (violation of § 422) in 1998, within the meanings of sections 667, subdivision (a)(1) and 1192.7, subdivision (c), and section 667, subdivisions (d) and (e)(1) and 1170.12, subdivisions (b) and (c)(1), respectively.

On November 6, 2003, during voir dire, the trial court was informed that defendant had stated he was experiencing chest pains. A sheriff's deputy from the Orange County jail reported to the court that a deputy spoke with a nurse at the jail who confirmed defendant had undergone several electrocardiograms while in custody, all of which results had been normal. The deputy further reported that defendant was not taking any heart medication and was not having a heart attack. Based on the information from the nurse, the court proceeded to complete voir dire.

On November 12, 2003, before opening statements had begun, the trial court was informed defendant jumped from the jail's second tier and was in the hospital. The court excused the jurors after ordering them to remain on telephone call status pending notification by the court with further instructions. The court advised counsel it had reviewed the reports by Dr. Rogers dated December 5, 2002, and August 4, 2003. The trial court also advised counsel the court had been provided three additional reports: Dr. Sharma's reports dated December 16, 2002, and January 10, 2003, and Dr. Rogers's report dated February 12, 2003. Neither the prosecution nor the defense objected to the court reviewing those reports. Defense counsel expressed doubt as to defendant's competence to the trial court.

On November 13, 2003, during a hearing before the trial court with defendant present, defense counsel again expressed doubt about defendant's competency and requested the criminal proceedings be suspended. The trial court appointed Dr. Sharma and Dr. Rogers to again examine defendant and submit reports to the court. Defense counsel advised the court that defendant had stated he wanted new counsel appointed to represent him. After conducting a hearing under *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], the trial court denied defendant's motion for new counsel.

At a hearing on November 17, 2003, the trial court advised the prosecution and defense counsel that it had received and reviewed new reports from Dr. Sharma and Dr. Rogers, both dated November 16, 2003. In his report, Dr. Sharma stated he interviewed defendant on November 14 and "[t]his interview was terminated when [defendant] told this examiner 'I will punch you if I was not handcuffed' and he informed me he did not wish to answer anymore questions." Dr. Sharma concluded in his report that defendant was competent, stating, in part, he "is a mentally ill individual and is also an antisocially motivated person. His non-cooperation at this time is under his

volitional control. He understands his legal predicament. He can cooperate (as he did with me) but at times he chooses to be uncooperative. I believe he is competent to stand trial. However, it is recommended he continue his prescribed psychotropic medications. I also anticipate he will engage in temper outbursts during his trial, especially if he believes [the] trial process is not going in his favor."

Dr. Rogers's November 16, 2003 report stated she reevaluated defendant for almost two hours on November 15, 2003. In her report, Dr. Rogers noted "two plus weeks ago, [defendant] was reportedly taken off Lithium, a medication which he says he has taken for the past 21 years, because of some abnormal blood chemistries (thyroid and liver). Records indicate that he has not always been on Lithium, however, and this problem of possible toxicity has arisen before. He was also reportedly reduced from 60 mg. of Paxil to 20 mg. of Paxil, another medication he has taken for depression for a long time. The Deputies advised me that the Jail Psych Team had warned them that there was a good likelihood that his *mental condition would decompensate*, which indeed has occurred."

Dr. Rogers further reported defendant had also started taking new medications sometime during the prior two weeks. Defendant's drug regimen at the time of this report included "Seroquil 200 mg. AM and noon, and 400 mg. at night; Klonipin for anxiety 2 mg. three times daily" and "PRN Ativan for agitation and anxiety." Dr. Rogers further stated, "[*h*]*e has decompensated for reasons that would have undoubtedly destabilized him anyway and it is most unfortunate that this change in medications was necessitated for medical safety reasons and took place concurrent with the start-up of his trial. There has not been sufficient time to achieve a level of management and control that would support him going forward into trial.*"

Although Dr. Rogers never expressly stated in her report an opinion that defendant was not competent to stand trial, she expressed the following additional observations and concerns: (1) defendant's mental stability "ha[d] markedly deteriorated since [she] saw him the last time in late July, 2003"; (2) during the interview, defendant was at first "hostile, shouting, glaring, and evidencing extreme impatience and anger, [which] then evolv[ed] into crying, sobbing, weeping, apologizing"; (3) in discussing trial issues, defendant "could not go to the relevant level of reasoning, e.g. the issue is no longer his guilt or innocence, but how the past case is going to be dealt with in the current proceeding" and he "became angry and would not discuss it rationally"; (4) "[t]he kind of thinking required to deal with this legal issue involves a higher level of abstraction than the defendant appears capable of performing"; (5) defendant was unable to provide Dr. Rogers a "meaningful 'recap'" as to what had occurred in court to date; (6) it was unclear to

Dr. Rogers how much of the proceedings defendant understood given his "severely impaired" memory functioning, and limited attention span and focus; and (7) defendant told Dr. Rogers he would try very hard to maintain, listen carefully, and write notes to counsel if witnesses said anything that he thought was not correct, but she doubted his capabilities in this regard.

In her report, Dr. Rogers suggested measures that might be taken to help defendant reach an "optimal level of competency." She further stated, "[i]n the best of circumstances, his competency will be marginal" and the "predictability of his functioning, especially over a period of hours to days, is unlikely to be reliable. I have little ability to predict if he could make it through three days of trial, and probably the only way to know is to try it, although I think odds are stacked against it."

The trial court concluded defendant was competent, and denied defense counsel's request to suspend the criminal proceedings to conduct a second competency hearing, stating, "well, the court has given this a great deal of consideration. I've reviewed a good deal of case law. [¶] And I have had an opportunity to view the defendant last week, to communicate with him. I would note that, here in court this morning, he seems to be doing pretty good. His tie is not perfectly tied. [¶] But the court is satisfied that, from a medical standpoint, that that doesn't create a problem, the injury that he suffered last week. That was, of course, one of the court's immediate concerns last week and what resulted in trailing the matter to this morning and having the court reappointing Dr. Rogers and Dr. Sharma to evaluate you, based upon their familiarity with the history of the case and the facts and circumstances. [¶] The court would note that criminal proceedings had been suspended, and these two doctors had been appointed before. And there had been a competency hearing, wherein the defendant was found competent to stand trial. That was on February the 19th of 2003, there being a finding that the defendant was not mentally incompetent to stand trial. [¶] The court is aware that the court need not suspend proceedings to conduct a second competency hearing unless it is presented with a substantial change of circumstances or new evidence casting serious doubt on the validity of that finding. [¶] And in reviewing the reports of the doctors—and mind you that I've reviewed three reports from Dr. Rogers at the behest of counsel—December 5th, '02[,] February 12 of '03, August 4th of . . . '03. [¶] I have reviewed reports from Dr. Sharma from December of '02, January 10th of '03, and November 16th of '03; and also Dr. Rogers' report of November 16, '03. [¶] And the court does not find that there is a substantial change of circumstances or new evidence which would create serious doubt on the validity of that finding. [¶] In fact, I would note that Dr. Sharma rather emphatically states that any non-cooperation at this time by [defendant] is under his volitional control, and that he understands his legal predicament, and that he is capable of cooperating in this matter. And he believes he is competent to stand trial. [¶]

And I would note, in relation to Dr. Rogers' report, that she never really addresses—I shouldn't say she doesn't address the issue, but she never fully answered the question. But she does talk·extensively about how the matter might proceed in terms of the continuation of proceedings. [¶] But the court would note that we are in a position to proceed." The court added, "[a]nd I don't know if it's—as we know, on these matters, experts are not on all fours. But I think the issue the court is addressing is the standards that are set forth in *People* [v.] *Kelly* [(1992)] 1 Cal.4th 495 [3 Cal.Rptr.2d 677, 822 P.2d 385]. [¶] . . . [A]nd I note in relation to it, that the *Marsden* hearing that the court heard last week, that there is an exchange and a recognition by the defendant that he understands his legal predicament."

Trial proceedings on the charged offenses resumed. On November 19, 2003, the jury found defendant guilty on all counts as charged. The jury found the enhancement allegation to be true as to counts 1, 2, and 3. The prior conviction allegations were also found true.

In January 2004, the trial court received further reports from Dr. Sharma and Dr. Rogers. The court found defendant's condition had changed since the trial, determined defendant was incompetent to proceed with sentencing, and suspended the criminal proceedings. Defendant brought a motion for a new trial, in which he argued the trial court erred by failing to suspend the trial in November 2003. In March 2005, the trial court found defendant was not a mentally incompetent person and ordered the criminal proceedings reinstated. The court denied defendant's motion for a new trial. Defendant was sentenced to 26 years in state prison. Defendant appealed.

## DISCUSSION

### A.

#### STANDARDS OF REVIEW AND GENERAL PRINCIPLES RELATING TO COMPETENCY HEARINGS

#### 1.

*The United States Constitution and the Penal Code*

The due process clause of the Fourteenth ·Amendment to the United States Constitution and section 1367 prohibit the state from trying or convicting a·criminal defendant while he is mentally incompetent. (*People v. Rogers, supra*, 39 Cal.4th at p. 846.) Section 1367, subdivision (a) states, "[a] person cannot be tried or adjudged to punishment while that person is

mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." The defendant has the burden of proving his or her incompetency by a preponderance of the evidence. (*People v. Marshall, supra,* 15 Cal.4th 1, 31.)

"Both federal due process and state law require a trial judge to suspend trial proceedings and conduct a competency hearing whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial." (*People v. Rogers, supra,* 39 Cal.4th at p. 847; see *People v. Young* (2005) 34 Cal.4th 1149, 1216 [24 Cal.Rptr.3d 112, 105 P.3d 487] [if a defendant produces substantial evidence of incompetence, " 'due process requires that a full competence hearing be held as a matter of right' " and the trial judge has " 'no discretion to exercise' "].) The California Supreme Court has further stated, " 'substantial evidence of incompetence is sufficient to require a full competence hearing even if the evidence is in conflict.' " (*People v. Young, supra,* 34 Cal.4th at p. 1216.)

■ "Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations." (*People v. Rogers, supra,* 39 Cal.4th at p. 847.) "More is required than just bizarre actions or statements by the defendant to raise a doubt of competency. [Citation.] In addition, a reviewing court generally gives great deference to a trial court's decision whether to hold a competency hearing. As we have said: ' "An appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper." ' [Citation.]" (*People v. Marshall, supra,* 15 Cal.4th at p. 33.)

When there is less than substantial evidence, the trial court still has discretion whether to order a competency hearing. (*People v. Marshall, supra,* 15 Cal.4th at p. 33.) The trial court's decision whether to order a competency hearing under such a circumstance is given deference because the court "has the opportunity to observe the defendant during trial." (*People v. Rogers, supra,* 39 Cal.4th at p. 847.)

### 2.

### *The Standards in the Trial Court for a Subsequent Competency Hearing*

**(3)** When a competency hearing has already been held and the defendant has been found to be competent to stand trial, "a trial court is not required to

conduct [another] competency hearing unless 'it "is presented with a substantial change of circumstances or with new evidence" ' that gives rise to a 'serious doubt' about the validity of the competency finding. [Citation.]" (*People v. Marshall, supra,* 15 Cal.4th at p. 33.)

In deciding whether the trial court should have held a second competency hearing, the first question is: What standard of proof must be used by the trial court to trigger a subsequent competency hearing? Does the trial court decide if there is substantial evidence of incompetency, as would be the case in the context of a first competency hearing? Or does the trial court weigh the evidence in making its determination?

In *People v. Medina* (1995) 11 Cal.4th 694, 734 [47 Cal.Rptr.2d 165, 906 P.2d 2], the California Supreme Court held that evidence of the defendant's "continued noncooperation did not, under the circumstances, constitute *substantial evidence* of a change in circumstances necessitating a new hearing." (Italics added.) *People v. Medina* thus strongly suggests the standard of proof necessary to trigger an initial competency hearing is the same standard required to trigger subsequent competency hearings—that is, whether substantial evidence exists in the record showing a change of circumstances supporting another competency hearing, regardless of whether contrary evidence also exists in the record. (See also *People v. Frye* (1998) 18 Cal.4th 894, 1005 [77 Cal.Rptr.2d 25, 959 P.2d 183] [the defendant's evidence neither "constitute[s] a change in circumstances warranting a second competency determination, . . . [n]or does it otherwise comprise substantial evidence of mental incompetence"].)

More recently, the Supreme Court in *People v. Weaver* (2001) 26 Cal.4th 876 [111 Cal.Rptr.2d 2, 29 P.3d 103] again suggested the same substantial evidence standard of proof applies in determining whether initial or subsequent competency hearings must be held. In that case, a psychiatrist testified the defendant was incompetent even though the psychiatrist had never examined or tested him. (*Id.* at p. 953.) The Supreme Court noted the psychiatrist's testimony did not address whether there had been a substantial change of circumstances since the defendant had been declared competent earlier in the proceedings, and held the testimony "did not comprise substantial evidence of incompetence necessitating a hearing." (*Id.* at p. 954.)

In *People v. Huggins* (2006) 38 Cal.4th 175, 220 [41 Cal.Rptr.3d 593, 131 P.3d 995], the California Supreme Court reiterated that the trial court is not required to conduct a second competency hearing absent evidence of a substantial change of circumstances or new evidence casting a serious doubt on the validity of the earlier competency finding. The court, however, further stated, "[w]e apply a deferential standard of review to a trial court's ruling

concerning whether another competency hearing must be held. [Citation.] *We review such a determination for substantial evidence in support of it.*" (*Ibid.,* italics added.)

■ Considered in context, the Supreme Court's latter statement in *People v. Huggins* does not limit our appellate review of the trial court's decision regarding a second competency hearing to whether the trial court's decision is supported by substantial evidence. Such an interpretation would conflict with other portions of *People v. Huggins, supra,* 38 Cal.4th at page 220, *People v. Medina,* and *People v. Weaver,* as discussed, *ante,* and would inexplicably apply a different standard of proof from that properly applied in making an initial determination whether a competency hearing should be held. Applying the analysis of the Supreme Court decisions, we hold that the same standard of proof in trial courts applies in the first and subsequent decisions whether to hold a competency hearing. There is no reason to have a different standard for each phase. The same constitutional and statutory requirements exist, so why should there be a difference in the standard?

Therefore, the next question is posed: Is there substantial evidence in this record to require a subsequent competency hearing?

B.

SUBSTANTIAL EVIDENCE SHOWING A SUBSTANTIAL CHANGE OF
CIRCUMSTANCES WAS BEFORE THE TRIAL COURT, TRIGGERING THE
REQUIREMENT THAT A SUBSEQUENT COMPETENCY HEARING BE HELD

■ Was there substantial evidence sufficient to meet the standard of a substantial change of circumstances or new evidence casting a serious doubt on the validity of the trial court's earlier finding that defendant was competent? The California Supreme Court has stated the substantial evidence standard "is satisfied if at least one expert who is competent to render such an opinion, and who has had a sufficient opportunity to conduct an examination, testifies under oath with particularity that, because of mental illness, the accused is incapable of understanding the proceedings or assisting in his defense." (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1047 [47 Cal.Rptr.3d 467, 140 P.3d 775].) In *People v. Stankewitz* (1982) 32 Cal.3d 80, 93 [184 Cal.Rptr. 611, 648 P.2d 578], the Supreme Court stated, "once substantial evidence in the form of a psychiatric opinion of incompetence was

presented, the court was required to hold a competency hearing. . . . 'Once such substantial evidence appears, a doubt as to the sanity of the accused exists, no matter how persuasive other evidence—testimony of prosecution witnesses *or the court's own observations of the accused*—may be to the contrary.' "

We conclude Dr. Rogers's November 16, 2003 report constituted the requisite substantial evidence as it showed a substantial change of circumstances had occurred.

The record does not show that the trial court found Dr. Rogers's November 16, 2003 report in any way unreliable. (See, e.g., *People v. Lewis and Oliver, supra*, 39 Cal.4th at pp. 1047–1049 & fn. 25 [expert testimony one of the defendants was not competent did not constitute substantial evidence because the expert's testimony was rejected by the trial court for "plausible reasons," including lack of credibility].) Instead, the trial court stated that, in her report, Dr. Rogers had not "fully answered the question" whether defendant was competent to stand trial. (See *People v. Leever* (1985) 173 Cal.App.3d 853, 864 [219 Cal.Rptr. 581] [a qualified professional's report "which merely contains evaluations *without specific reference to the defendant's competency*" will not furnish substantial evidence of incompetency]; see also *People v. Burney* (1981) 115 Cal.App.3d 497, 503 [171 Cal.Rptr. 329] ["[t]he expert must state with particularity that in his professional opinion the accused is . . . incapable of understanding the purpose or nature of the criminal proceedings being taken against him or is incapable of assisting in his defense or cooperating with counsel"].)

True, Dr. Rogers did not expressly state the opinion defendant was "incompetent"; her report, however, addressed at length how and why defendant was unable to assist counsel, based on information she had obtained during her almost two-hour interview with defendant on November 15, 2003. (See § 1367, subd. (a) [a defendant is mentally incompetent "if, as a result of mental disorder or developmental disability, the defendant is unable . . . to assist counsel in the conduct of a defense in a rational manner"].)

Dr. Rogers's observations and comments included: (1) one psychotropic medication (lithium) that defendant had been taking for a long period of time was withdrawn, and another (Paxil) was significantly reduced, approximately two weeks before the beginning of trial; (2) as a result of the change in medications, defendant's mental condition had *"decompensated"*; (3) there

had not been sufficient time since the change in medications "*to achieve* [for defendant] *a level of management and control that would support him going forward into trial*"; (4) defendant's mental stability "ha[d] markedly deteriorated since [she last] saw him . . . in late July, 2003"; (5) when discussing trial issues, defendant "could not go to the relevant level of reasoning"; (6) defendant was unable to provide a "meaningful 'recap' " of what had happened in court to date; (7) it was unclear how much of the proceedings defendant understood, given his "severely impaired" memory functioning, and limited attention span and focus; (8) she doubted defendant would be capable of listening carefully at trial and writing notes to counsel if witnesses said anything he thought was incorrect; and (9) "[i]n the best of circumstances, his competency will be marginal."

█ Dr. Rogers's report contained substantial evidence showing defendant was no longer able to assist counsel in conducting the defense, in part because of the recent change in defendant's psychotropic medications. This evidence triggered the need for another competency hearing because it showed a substantial change of circumstances since the trial court's earlier finding of competency that gave rise to a serious doubt about defendant's competence. The trial court therefore should have conducted a second competency hearing.

## C.

### The Matter Is Remanded for the Trial Court to Determine Whether a Retrospective Hearing May Be Held

█ The California Supreme Court in *People v. Young, supra*, 34 Cal.4th 1149, 1216–1217, stated, "where the substantial evidence test is satisfied and a full competence hearing is required but the trial court fails to hold one, the judgment must be reversed. [Citation.]" In a footnote, and without approving or disapproving the case, the Supreme Court cited *People v. Ary* (2004) 118 Cal.App.4th 1016, 1025–1029 [13 Cal.Rptr.3d 482] for the proposition that "in some circumstances, a remand may be appropriate and reversal for such error might be unnecessary." (*People v. Young, supra*, 34 Cal.4th at p. 1217, fn. 16.)

In *People v. Ary, supra*, 118 Cal.App.4th at pages 1027–1028, the appellate court concluded that retrospective competency hearings might be constitutionally permissible in specific cases. (See *Drope v. Missouri* (1975) 420 U.S. 162, 183 [43 L.Ed.2d 103, 95 S.Ct. 896] [accepting possibility of constitu-

tionally adequate postappeal evaluation of defendant's pretrial competence]; *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 67 [2 Cal.Rptr.2d 389, 820 P.2d 613] [citing reference in *Drope v. Missouri* about possibility of constitutionally adequate postappeal competency evaluation]; *People v. Castro* (2000) 78 Cal.App.4th 1402, 1419 [93 Cal.Rptr.2d 770] ["the California Supreme Court has adopted the view that the United States Supreme Court 'accept[s] the possibility of a constitutionally adequate posttrial or even postappeal evaluation of the defendant's pretrial competence' "].)

In *People v. Ary, supra,* 118 Cal.App.4th at page 1028, the court stated, "it is the rare case in which a meaningful retrospective competency determination will be possible. The inherent difficulty of such a determination, of course, is that there will seldom be sufficient evidence of a defendant's mental state at the time of·trial on which to base a subsequent competency determination. [Citation.] This is because a trial court's initial failure to hold a timely competency hearing is almost always rooted in a fundamental inattentiveness to the defendant's mental condition. The record in such cases will, therefore, seldom contain useful contemporaneous information regarding a· defendant's mental state at the time of trial and his ability, at that time, to understand the nature of the proceedings and assist in his defense. For this reason, courts have declined to permit a retrospective competency hearing after reversing a conviction because of the failure to hold such a hearing originally." (See *Pate v. Robinson* (1966) 383 U.S. 375, 387 [15 L.Ed.2d 815, 86 S.Ct. 836] [noting "the difficulty of retrospectively determining an accused's competence to stand trial"].)

The court in *People v. Ary, supra,* 118 Cal.App.4th at page 1029, concluded, "[i]t is only because of the highly unusual nature of this case that we remand this matter to the trial court for a determination as to whether such a hearing is possible. During pretrial hearings held in 1999 and 2000 on defendant's competence to waive his *Miranda* [*v. Arizona* (1966) 384 U.S. 436] [16 L.Ed.2d 694, 86 S.Ct. 1602] rights and the voluntariness of his confession, extensive expert testimony and evidence was proffered regarding defendant's mental retardation and his ability to function in the legal arena. Much of this information would be relevant in a competency hearing. Although we could remand this matter and order a competency hearing to be held, we instead take the additional step of directing the trial court to determine whether the available evidence and witnesses are sufficient to permit it to reach a 'reasonable psychiatric judgment' of defendant's competence to stand trial. [Citation.] Pertinent to, but not necessarily determinative of, this issue is whether the experts who examined defendant in 1999 and

2000 are available and able to render an opinion about defendant's competence to stand trial in 1999 and 2000. On remand, therefore, the People will have the burden of establishing that a retrospective competency hearing can be held." (See *Odle v. Woodford* (9th Cir. 2001) 238 F.3d 1084, 1089–1090 ["We have said that retrospective competency hearings may be held when the record contains sufficient information upon which to base a reasonable psychiatric judgment"].)

Here, as in *People v. Ary, supra,* 118 Cal.App.4th at page 1029, the record shows defendant was evaluated by Dr. Sharma and Dr. Rogers at the beginning of trial for the purpose of determining his competence. Dr. Sharma and Dr. Rogers filed reports summarizing their observations and conclusions on this subject. Either or both might be available to testify at a retrospective competency hearing. If so, expert testimony might be able to assist the trial court in determining whether defendant was competent at the time of trial. The experts perhaps could explain or elaborate on the observations and conclusions set forth in their reports. Significantly, they could testify, for example, whether any medications prescribed for defendant in place of lithium and the larger dose of Paxil he had been taking constituted adequate substitutions, and to what extent, if any, defendant's competence was compromised by such a change in his medication regimen.

Because this might be a case in which a retrospective competency hearing should be held, we remand to the trial court with directions as detailed in the disposition.

## D.

### SENTENCING ISSUE

In accordance with miscellaneous order No. 020207, defendant's counsel and the People filed supplemental letter briefs addressing whether the trial court's imposition of the upper term in this case is unconstitutional based on the United States Supreme Court's recent decision in *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856]. Defendant and the People waived oral argument on this issue. Because we reverse the judgment on the ground the trial court erred by failing to conduct a second competency hearing, we do not reach defendant's arguments regarding sentencing. If the sentencing phase is reached, the trial court should sentence defendant in accordance with *Cunningham v. California.*

## DISPOSITION

We reverse the judgment and remand to the trial court with directions to decide whether a retrospective competency hearing should be held to determine whether defendant was competent at the time of trial in November 2003. Should the trial court on remand decide the prosecution has failed to carry its burden of proving that such a retrospective competency hearing should be held, defendant would be entitled to a new trial. If the trial court decides that a retrospective competency hearing should be held, the hearing shall be calendared and held. In the event such a retrospective competency hearing is held and defendant is found to have been competent at the time of trial in November 2003, the trial court shall reinstate the judgment and resentence defendant in accordance with *Cunningham v. California, supra,* 549 U.S. 270 [127 S.Ct. 856]. If, after such hearing, defendant is found not to have been competent at the time of trial in November 2003, defendant would be entitled to a new trial.

Sills, P. J., and Aronson, J., concurred.

A petition for a rehearing was denied April 17, 2007, and the opinion was modified to read as printed above.