Filed 2/25/14  P. v. Butterfield CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E056400 |
| v. | (Super.Ct.No. RIF1101688) |
| JEFFERY DARNELL BUTTERFIELD, | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Edward D. Webster, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION[1]

A jury convicted defendant Jeffrey Darnell Butterfield on four criminal counts: attempted carjacking (§ 664/215, subd. (a)); petty theft (§ 484, subd. (a)); second degree burglary (§ 459); and receipt of stolen property (§ 496, subd. (a)). The trial court found defendant's prior conviction to be true and found that it qualified as a strike and serious felony conviction. The trial court sentenced defendant to a total term of 14 years in prison.

Before trial, defendant's competency was questioned and several doctors evaluated him. The trial court subsequently found by a preponderance of evidence that defendant was competent to stand trial. On appeal, the only issue defendant raises is that the evidence was insufficient to support a finding of competency and the resultant trial violated his state and federal constitutional rights to due process, to assistance of counsel, and to be present during the proceedings against him. We hold substantial evidence supports the finding of competency and affirm the judgment.

# II

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Evidence at Trial*

We briefly summarize the underlying facts as presented at trial to provide context for defendant's arguments about competency. On March 4, 2011, defendant committed a

---

[1] Unless stated otherwise, all statutory references are to the Penal Code.

series of theft-related crimes in Corona. First, defendant stole an unattended cellular flip phone from an auto mechanic. Later that morning, defendant committed three additional crimes at a Circle K convenience store where he tried to carjack a customer's car from the parking lot, stole items from inside the store, and stole a cell phone from another customer's car.

At the Circle K, defendant followed a customer to her car and tried to get in. He demanded, "Get out of the car. I'm a double agent. You have narcotics or weapons on you?" and continued, "Give me the car. Get out of the car." He insisted, "Bitch, get out of the car. You don't know me. You don't know what I'll do." He grabbed his crotch and said, "You want me to put my dick in your face?" When the customer started honking the car horn, defendant walked away.

Defendant returned to the Circle K, grabbed some beef jerky and magazines, and left without paying. In the parking lot, he rummaged in another car's center console and took a Blackberry cell phone but was startled when the car's owner shouted at him. He left the beef jerky, some candy, and magazines in the car and departed. The police soon apprehended defendant with the two stolen cell phones.

Defendant's only defense was to challenge the attempted carjacking victim's prior statement that defendant had a tattoo on his neck.

B. *Competency Proceedings*

A criminal complaint was filed in March 2011. In May 2011, defendant's

3

*Marsden*[2] request was denied and Doctor Michael E. Kania was appointed to evaluate defendant under Evidence Code section 1017. His report is not part of the record on appeal.

On August 24, 2011, the court declared a doubt as to defendant's competence to stand trial and suspended proceedings. The court appointed three doctors—Stacey Wood, Robert L. Suiter, and L.D. Miller—to evaluate defendant in August 2011, November 2011, and January 2012. (Evid. Code, § 1368.) Dr. Wood found defendant not competent to stand trial and Doctors Suiter and Miller found him competent.

In August 2011, Dr. Wood relied on her personal evaluation of defendant, correspondence with counsel, police reports, and medical records from Patton Hospital, ultimately concluding that defendant was unable "to understand the current proceedings" or to "cooperate in a rational manner" based on his mental health history, his present condition, and "some general risk for harm to others." In particular, Dr. Wood found defendant's thinking "disorganized, tangential and illogical." Defendant claimed he suffered from the disorder called "zombia" and he made sexually inappropriate remarks. He believed his attorney was conspiring against him. Defendant's extensive psychiatric history included attention deficit hyperactivity disorder, schizophrenia, cannabis abuse, and medical notes about bizarre, illogical, violent, and aggressive behavior and paranoia, including assaulting four people at Patton. Dr. Wood's assessment of three aspects of defendant's competency to stand trial indicated defendant lacked a factual understanding

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

of the legal system and the capacity to assist counsel and to appreciate his own legal situation. At one time, he apparently was able to cooperate rationally with an attorney but, without medication, "he has evidenced declines in his reasoning abilities."

In December 2011, Dr. Suiter, relying on the felony complaint and his personal evaluation of defendant, concluded that defendant was "competent to stand trial, even though he would not reveal his knowledge of the roles of the principal court officers nor describe how he could cooperate with his attorney." Dr. Suiter described defendant as hesitant, irritable, challenging, guarded, angry, unresponsive, and antisocial. Defendant denied having mental health issues and alcohol or drug use. His memory, concentration, and judgment were poor. Defendant refused to answer questions about his understanding of the legal system.

In January 2012, Dr. Miller, also relying on the conducted evaluation and the felony complaint,[3] concluded that defendant "does not have a serious mental disorder that prevents him from understanding and comprehending the current court action," "has the ability and capacity to relate and cooperate with his attorney in a rational manner in the preparation of a defense," and "consciously" engaged in "malingering" behavior during the evaluation. Dr. Miller found defendant uncooperative and unreliable. Again, defendant denied having mental health issues and alcohol or drug use. When Dr. Miller tried to assess defendant's understanding of the legal process, he found him to be logical,

---

[3] Dr. Miller incorrectly asserts that defendant was on trial for making criminal threats.

5

demonstrating fair concentration and judgment. Even so, defendant professed not to know the charges against him and not to have consulted with his attorney.

The parties submitted on the three 2011 and 2012 reports. Defense counsel argued that Dr. Wood's report was more comprehensive and accurate than the other reports. Defense counsel maintained that defendant needed medication. The prosecutor responded that the two more recent reports were more reliable and that the issue was defendant's competency, not whether he was mentally ill. She further argued defendant was evasive and uncooperative during the evaluations.

The court stated it had read and considered all three reports and a fourth evaluation by Dr. Patricia Kirkish, conducted in February 2010 in a separate criminal proceeding. After hearing argument, the court found the reports to be equal in quality and defendant did not meet his burden of demonstrating incompetence. The court observed defendant appeared to have a sufficient understanding of court proceedings and also appeared to have been malingering. The court concluded: "I can't say that given the presumption of competence and then the reports here that the Court is convinced to a preponderance of the evidence that he is incompetent." The court declared defendant competent and reinstated proceedings.

Subsequently, the court raised some concerns about defendant's behavior at trial. Consequently, defendant was placed in restraints concealed from the jury's view.

## III

## EVIDENCE OF COMPETENCY

State and federal constitutional law require a defendant to understand the proceedings against him and to assist in his defense. (*People v. Hayes* (1999) 21 Cal.4th 1211, 1281; *Godinez v. Moran* (1993) 509 U.S. 389, 396.) "Under California law, a person is incompetent to stand trial 'if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.' (§ 1367, subd. (a).)" (*People v. Young* (2005) 34 Cal.4th 1149, 1216; *People v. Rogers* (2006) 39 Cal.4th 826, 846-847; *People v. Samuel* (1981) 29 Cal.3d 489, 500.) Additionally: A defendant is incompetent to stand trial if he or she lacks a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and] . . . a rational as well as a factual understanding of the proceedings against him." (*Dusky v. United States* (1960) 362 U.S. 402; *Drope v. Missouri* (1975) 420 U.S. 162, 171.)

A defendant is presumed competent unless he proves he is not competent by a preponderance of the evidence. (§ 1369, subd. (f); *People v. Lawley* (2002) 27 Cal.4th 102, 131.) The appellate court conducts a deferential standard of review to determine whether substantial evidence supports the trial court's findings. (*People v. Dunkle* (2005) 36 Cal.4th 861, 885; *People v. Marshall* (1997) 15 Cal.4th 1, 31; *People v. Kaplan* (2007) 149 Cal.App.4th 372, 382-383; *People v. Castro* (2000) 78 Cal.App.4th 1402, 1418.)

We hold the trial court properly found defendant was competent based on a preponderance of the evidence after reviewing the reports of all three doctors. Although defendant contends Dr. Wood's report is superior to the reports of Doctors Suiter and Miller, the trial court was within its discretion to find defendant competent based on its observations of him, its interpretation of the three evaluations, and the opinions of Doctors Suiter and Miller.

The three doctors observed similar behavior in defendant. He was uncooperative and gave conflicting and bizarre answers. But two doctors concluded that defendant was malingering and deliberately not cooperating. Both doctors noted that defendant's thinking appeared logical and sequential, although odd, and did not stem from delusional behavior. Additionally, defendant's conscious malingering offered further evidence of his competency. In contrast, Dr. Wood based her findings only on "complete responses to questions he was willing to answer." Dr. Wood appeared to accept defendant's incorrect answers as evidence of incompetence rather than deliberate fakery.

As the prosecutor argued, the issue in a competency evaluation is not whether the defendant suffers from a mental illness but whether defendant is unable to understand the proceedings against him or assist his attorney. (§ 1367, subd. (a).) Irrational behavior is not enough to demonstrate incompetency: "More is required than just bizarre actions or statements by the defendant to raise a doubt of competency." (*People v. Marshall, supra*, 15 Cal.4th at p. 33; *People v. Blair* (2005) 36 Cal.4th 686, 718.) The fact the defendant was restrained during trial does not mean that he was incompetent. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1068.)

8

All three doctors agreed that defendant was difficult to assess but two doctors regarded him as legally competent. Dr. Wood based her contrary opinion on incomplete testing and responses. The trial court could reasonably reject Wood's opinion given that it was defendant's burden to demonstrate incompetence. The court properly accepted the two opinions that defendant was competent but pretended otherwise.

During his evaluations, defendant was uncooperative, refused to respond, and deliberately answered other questions incorrectly. As such, defendant failed to meet his burden of establishing incompetency to stand trial. The trial court could properly credit the doctors' opinions that the evidence of deliberate malingering pointed to competency. Because the trial court's finding was supported by substantial evidence, the court was within its discretion and defendant's constitutional rights were not violated.

IV

DISPOSITION

Substantial evidence supported the trial court's finding that defendant did not show he was incompetent to stand trial. We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


HOLLENHORST
Acting P. J.


McKINSTER
J.

9