Filed 3/16/22 P. v. Scott CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>RALPH MANNING SCOTT,<br><br>      Defendant and Appellant. | A161008<br><br>(Marin County<br>Super. Ct. No. SC207280A) |

This is an appeal from the trial court's order finding defendant Ralph Manning Scott mentally incompetent to stand trial and committing him to a state hospital or treatment facility pursuant to Penal Code[1] sections 1367 and 1370.  Defendant contends the court and appointed experts improperly relied on the "mere fact" of his mental illness and ignored his "demonstrated ability to work and cooperate with his counsel" in finding him incompetent.  (Initial caps and boldface omitted.)  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In December 2018, a complaint was filed charging defendant with stalking then-Lieutenant Governor Gavin Newsom (count 1) and his sister Hilary Newsom (count 2) in violation of section 646.9, subdivision (a).  The

---

[1] Unless otherwise stated, all statutory citations herein are to the Penal Code.

1

complaint further alleged defendant had one prior serious or violent felony conviction (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)) and one prior prison commitment (§ 667.5, subd. (b)).

These charges stemmed from an incident on October 10, 2018, wherein defendant took a taxi to Lieutenant Governor Newsom's Marin County home and lied to Newsom's minor daughter to gain entry into the home.[2] Specifically, defendant arrived with flowers on Lieutenant Governor Newsom's birthday and falsely told the child that he was the son of President John F. Kennedy (hereinafter, JFK) and a friend of her father and grandfather.

At defendant's request, the child led him into the home so that he could find a photograph of JFK on the family's computer. About 10 or 15 minutes after his arrival and before leaving, defendant signed and wrote his phone number on a birthday card for Lieutenant Governor Newsom.

Later that day, the lieutenant governor's sister Hilary Newsom called the phone number written on the birthday card and spoke to defendant. She determined defendant did not know her family but had researched them extensively, which greatly upset her. The Newsom family thereafter had defendant served with a temporary restraining order, which did not stop defendant from repeatedly leaving voicemail messages for and sending letters to family members, including Hilary Newsom and Lieutenant Governor Newsom's wife.

On May 21, 2019, defendant pleaded not guilty to both counts and denied the enhancement allegations.

On June 6, 2019, the trial court suspended the proceedings pursuant to section 1368 and appointed mental health experts, Jonathan French, Ph.D.,

---

[2] These facts are taken from the preliminary hearing transcript.

2

and psychiatrist Zachary Torry, M.D., to evaluate defendant's mental competency to stand trial. These mental health experts interviewed defendant and reviewed relevant medical and criminal records before submitting their reports.[3]

In his July 9, 2019 report, psychiatrist Dr. Torry diagnosed defendant with "Delusional Disorder, Grandiose Type, Continuous." (Boldface omitted.) Dr. Torry noted defendant's "understanding of the charges that he is facing and his incarceration stem from a complex delusional belief system. He expressed his belief that his arrest was 'a setup' and 'a ruse' because those in law enforcement now 'connected the dots' and believed that he is 'JFK's son.' " Further, defendant "believes that there will be no trial because of the dangers of exposing that JFK's son has been arrested." According to Dr. Torry, while defendant demonstrated "a coherent and rational understanding of the possible verdicts, the potential consequences of his charges, the roles of courtroom personnel, and the trial process," defendant's delusions interfered with his ability to understand "trial concepts" and to communicate with his attorney in order to prepare a defense.

Dr. French issued a report on July 12, 2019, provisionally diagnosing defendant with: "Delusional disorder, grandiose type, multiple episodes[;] [¶] Other specified personality disorder with antisocial, borderline, and narcissistic features[;] [¶] (Rule out) mood disorder, not otherwise specified." Dr. French then opined that defendant's pervasive delusional thinking, including his preoccupation with "being John Kennedy's love child,"

---

[3] Defendant has a lengthy criminal record dating to 1976 that includes at least 52 arrests, 23 convictions (seven of which were felonies), and numerous parole violations. Defendant has been found incompetent to stand trial twice and hospitalized numerous times under Welfare and Institutions Code section 5150.

3

prevented him from "remain[ing] productively focused upon his case." "[H]is record indicates that he has been acting in this manner for more than 40 years, with virtually no indication that he is prepared to change his ways." Thus, "[n]ot only does Mr. Scott exhibition [*sic*] a flawed understanding of the nature of these criminal proceedings, but he is fairly devoid of any capacity to cooperate with counsel in a rational manner."

On July 16, 2019, defendant waived his right to a jury trial on the competency issue and unsuccessfully moved the trial court to appoint a third doctor. He also unsuccessfully moved to remove his attorney under *People v. Marsden* (1970) 2 Cal.3d 118.

In January and March 2020, the trial court delayed trial due to the COVID-19 pandemic and ordered updated reports on defendant's competency. The court also appointed another psychiatrist, Omri Berger, M.D., to examine him.[4]

Dr. Torry submitted his second report on February 18, 2020, after reevaluating defendant. This time, Dr. Torry opined that defendant was competent to stand trial, explaining: "The severity of Mr. Scott's charges and his psychiatric history make this a complex case. Mr. Scott operates under a grandiose delusional belief system that can impair his thinking and decision-making. Based on this, I had previously opined that his delusions impaired his ability to proceed with trial. However, at this time, I opine that the impact from his delusions does not currently interfere with his ability to understand the nature of the criminal proceedings or his ability to rationally assist counsel in the conduct of a defense." Among other things, defendant "demonstrated a sufficient understanding of the nature and purpose of the

---

[4] By that time, Dr. French was no longer performing forensic evaluations.

4

criminal proceedings. He exhibited a coherent and rational understanding of the possible verdicts, the potential consequences of his charges, the roles of courtroom personnel, and the trial process. There was no evidence of delusional thinking or disorganized or psychotic process while discussing the trial fundamentals. He expressed a belief that he would get a fair trial."

Dr. Berger drew the opposite conclusion in his March 11, 2020 report. Finding defendant incompetent to stand trial, Dr. Berger diagnosed him with "Delusional Disorder, Grandiose Type, Continuous," and "Bipolar I Disorder." (Underscoring omitted.) Similarly to his colleagues, Dr. Berger emphasized defendant's persistent, grandiose, and delusional thinking regarding his parentage (which defendant believed would keep him out of prison) and his lack of insight into his mental illness and its role in his crimes. While defendant appeared to understand the legal process (including his charges, plea options, and potential penalties), his mental state precluded him from making rational and informed decisions regarding his case and undermined his ability to rationally communicate with and assist counsel.

At a status hearing on May 20, 2020, the court set the matter for trial on June 17, 2020, and ordered updated reports from Dr. Torry and Dr. Berger. Dr. Berger submitted his updated report on June 12, 2020, after reexamining defendant on June 2, 2020. Dr. Berger confirmed his opinion that defendant was not competent to stand trial. Dr. Berger opined that defendant continued to meet the diagnostic criteria for delusional disorder, grandiose type, continuous, and bipolar I disorder. As before, defendant demonstrated an adequate understanding of the legal proceedings, but due to his psychotic and manic symptoms he still lacked the capacity to rationally cooperate with and assist counsel. Dr. Berger emphasized that defendant continued to express "grandiose delusional beliefs in discussions of his alleged

5

offenses, defense strategies, and his appraisal of the likelihood of prevailing at trial." Dr. Berger was also concerned because defendant told him, " 'I am going to get a new attorney. He has gone backwards in time. He cannot be my attorney because I filed a claim against the county. It's called conflict-of-interest because you can't be represented by someone who you are suing . . . I am suing the attorney via the county, because the county pays my attorney. They raised my bail because of his negligence.' " (*Sic.*)

Dr. Torry submitted his new report on June 30, 2020, after reexamining defendant. Similarly to Dr. Berger, Dr. Torry diagnosed defendant with "Delusional Disorder, Grandiose, Continuous." (Boldface omitted.) Nonetheless, Dr. Torry found defendant competent to stand trial, explaining that he "operates under a grandiose delusional belief system involving his belief that he is [JFK's] illegitimate son, that Marilyn Monroe and Joe DiMaggio raised him, and that he knew Gavin Newsom's father among other prominent figures. However, the impact from his delusions does not interfere with his ability to understand the nature of the criminal proceedings or to rationally assist counsel in the conduct of a defense."

A bench trial on defendant's mental competency was held in the summer of 2020. Drs. Berger and French testified for the prosecution, and Dr. Torry testified for the defense. The reports of Dr. Berger and Dr. Torry were also admitted into evidence.

Adding to the opinions in his reports, Dr. Berger testified as to defendant's inability to handle the stress of trial. Defendant's jail records indicate he consistently exhibited mental illness symptoms while incarcerated, including manic behavior, impulsivity, agitation and suicidal ideations resulting in his placement on suicide watch. Dr. Berger opined that defendant would exhibit similar symptoms if made to undergo trial, which

would impair his ability to have rational and coherent discussions with his counsel.

Similarly, Dr. French testified defendant was "extremely variable," even in a controlled hospital setting, and would not be able to remain competent for any length of time in a trial setting. While defendant has good "moments," his history demonstrates they are fleeting.

Dr. Torry disagreed and opined that defendant pretended to be suicidal in jail in order to get assistance from jail staff. Dr. Torry stood by his opinions in the June 2020 report that defendant suffered from delusional disorder that did not interfere with his ability to cooperate with counsel to present a defense.

Last, defendant's trial attorney testified, confirming that he was able to regularly communicate with defendant. The attorney acknowledged their attorney–client relationship had been strained in the past but that it was now repaired.

On July 15, 2020, after taking the matter under submission, the trial court found defendant incompetent to stand trial and on September 2, 2020, ordered him committed to the State Department of State Hospitals pursuant to section 1370. This timely appeal followed.

## DISCUSSION

The sole issue on appeal is whether substantial evidence supports the trial court's determination under section 1367, subdivision (a)[5] that

---

[5] Section 1367, subdivision (a) provides: "A person shall not be tried or adjudged to punishment or have their probation, mandatory supervision, postrelease community supervision, or parole revoked while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal

7

defendant, "as a result of a mental health disorder or developmental disability, . . . is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

"A defendant is presumed competent unless the contrary is proven by a preponderance of the evidence. (§ 1369, subd. (f); [citation].) On appeal, the reviewing court determines whether substantial evidence, viewed in the light most favorable to the verdict, supports the trial court's finding. [Citation.] 'Evidence is substantial if it is reasonable, credible and of solid value.' " (*People v. Lawley* (2002) 27 Cal.4th 102, 131.)

In reviewing the record for substantial evidence, appellate courts generally give great deference to a trial court's competency decision. "As we have said: ' "An appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper." ' " (*People v. Marshall* (1997) 15 Cal.4th 1, 33 [affirming trial court's decision not to hold a second hearing on defendant's competency to stand trial]; accord, *People v. Kaplan* (2007) 149 Cal.App.4th 372, 381–382.)

In this case, the trial court confirmed before ruling that it had considered each of the mental health experts' evaluations and reevaluations, the trial testimony, preliminary hearing evidence, jail records, and the court's personal observations and interactions with defendant. The court then found defendant incompetent to stand trial for several reasons.

First, the court noted that while Dr. Berger's and Dr. Torry's reevaluations were just weeks apart, they described defendant's presentation quite differently. Most significant to our inquiry, Dr. Torry observed a

---

proceedings or to assist counsel in the conduct of a defense in a rational manner."

respectful and collaborative relationship between defendant and his attorney (Mr. Siroka).[6] Yet, defendant told Dr. Berger that he had no confidence in Mr. Siroka and intended to sue him for ineffective assistance. While acknowledging it did not know the reason for defendant's changed behavior, the court found that it "demonstrate[d] the continuing instability of Mr. Scott's thinking and behavior. [¶] I personally observed times in the courtroom when Mr. Scott is very cooperative and respectful. And other times when he has addressed the Court that he's completely incomprehensible and there is absolutely no way to redirect him."

Second, the court found Dr. Berger's opinions more persuasive than Dr. Torry's, explaining: "I found Dr. Berger's opinions to be more compelling because they appeared to me to be based on a much more thoughtful and thorough analysis of Mr. Scott's mental health and the information and documents provided to him. I was uncomfortable with the degree to which Dr. Torry appeared to be willing to defer to [defendant's counsel's] opinion that Mr. Scott could rationally assist him with a defense. [¶] I don't, in any way, wish to minimize [counsel's] views, which I do think are important and deserve serious consideration. But the issue of competence is not a legal issue. It is a medical, psychiatric determination . . . clearly beyond the expertise of, at least, most attorneys."

Third, the court "was concerned with the way in which Dr. Torry summarily dismissed the idea that Mr. Scott might also be suffering from Bipolar 1 Disorder, as diagnosed by Dr. Berger. In fact, Mr. Scott has told every evaluator to date that he had previously been diagnosed with Bipolar 2 Disorder, but that it didn't fit him. Dr. Torry, essentially, relied upon self-reports by Mr. Scott that he did have, did not have periods of mania or

---

[6] Attorney Siroka was present for Dr. Torry's evaluation.

inability to sleep or other manic depressive symptoms. But we know that Mr. Scott denies any mental health problems at all and has no insight into his mental health." Further, although "Dr. Torry indicated during his testimony that he had reviewed the jail mental health records, he made no reference to anything that was contained in them. The mental health records do confirm that, every month, Mr. Scott spends days in safety cells on suicide watch. I know there's been a suggestion that there's some kind of secondary game for him in doing that, but I think that also speaks to his lack of rationality."

The court's findings of incompetency under section 1367, subdivision (a) are fully supported by the record. Without rehashing the evidence set forth in detail *ante*, Dr. Berger, whose expertise is not in dispute, opined based on two separate evaluations that notwithstanding defendant's understanding of the criminal process, defendant lacked the capacity to rationally cooperate with counsel to prepare and present a defense due to his psychotic and manic symptoms.

At the hearing, Dr. French corroborated Dr. Berger's opinion that the stressful environment of a criminal trial would likely trigger defendant's mental illness symptoms. Dr. French opined that defendant was "extremely variable," even in a controlled hospital setting, and would not be able to remain competent for the duration of trial.

Defendant seeks to discredit these expert opinions, noting that Dr. French, unlike Drs. Torry and Berger, failed to personally reevaluate defendant before trial. In addition, defendant suggests the opinions of Dr. French and Dr. Berger are fatally flawed because they conclude defendant is incompetent to stand trial even though he understands the nature of the criminal process.

We reject these arguments.  The trial court appropriately weighed the opinions of all of the mental health experts and, after doing so, credited Dr. Berger's and Dr. French's opinions that defendant was mentally incompetent over Dr. Torry's contrary opinion.[7]  There is no basis on this record to second-guess the court's judgment.  (*People v. Mendoza* (2016) 62 Cal.4th 856, 880–881 [testimony of one psychiatrist and a supporting lay witness was sufficient evidence to find defendant competent, despite two psychiatrists' finding him incompetent]; *People v. Blacksher* (2011) 52 Cal.4th 769, 797 [trial court entitled to decide among conflicting psychiatrist reports].)  Indeed, it is well established that credible testimony from a single expert constitutes substantial evidence.  (*People v. Ramos* (2004) 34 Cal.4th 494, 507–508 [" 'the substantial-evidence test is satisfied' " where a treating psychiatrist opines under oath that the defendant is incapable of assisting in his or her defense or cooperating with counsel due to mental illness].)

Moreover, the language of section 1367, subdivision (a) is clear:  A defendant is mentally incompetent to stand trial if, as a result of mental illness, he or she is "unable to understand the nature of the criminal proceedings *or to assist counsel in the conduct of a defense in a rational manner*."  (Italics added.)  Here, the trial court, based on the experts' opinions, found true the latter (inability to assist counsel in a rational matter) but not the former (inability to understand the nature of the

---

[7] Defendant cites *People v. Koontz* (2002) 27 Cal.4th 1041 for the proposition that a defendant's experience in the criminal justice system and participation in his or her own defense "*may* belie a claim of incompetence." (Italics added.)  We do not disagree.  However, contrary to this case, not a single psychiatrist opined that the defendant in *Koontz* was mentally incompetent to stand trial.  (See *id.* at pp. 1065–1066.)

11

proceedings).  In doing so, the court fully complied with the law.  Accordingly, the order of incompetency stands.

## DISPOSITION

The trial court's order finding defendant mentally incompetent to stand trial and committing him to a state hospital or treatment facility is affirmed.

_____
Jackson, P. J.

WE CONCUR:

_____
Simons, J.

_____
Needham, J.

A161008/*People v. Ralph Manning Scott*