Filed 6/2/16  P. v. Herrera CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ANTHONY HERRERA,<br><br>  Defendant and Appellant. | F070010<br><br>(Super. Ct. No. 13CM7083)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kings County.  Thomas DeSantos, Judge.

Anne V. Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Marcia A. Fay, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Anthony Herrera was charged with obstructing or resisting a correctional officer in the performance of his duties by use of violence (Pen. Code, § 69,[1] count 1), and battery on a correctional officer (§ 4501.5, count 2). A jury found defendant not guilty of violating section 69, but guilty of the lesser included offense of resisting a peace officer, a misdemeanor (§ 148, subd. (a)(1)). Defendant was found guilty as charged on count 2.

In addition, the jury also found defendant suffered three prior strikes (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). The court struck two of defendant's prior strikes and sentenced defendant to a total prison term of eight years.

On appeal, defendant claims (1) his defense counsel was incompetent for calling the complaining witness to the stand to testify, and for misunderstanding the evidence as it applied to the charge of battery (§ 4501.5); (2) the trial court erred in failing to order a competency evaluation of defendant pursuant to section 1368; and (3) the trial court erred in denying defendant's posttrial motion to substitute counsel brought pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). We disagree and affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

*Prosecution*

On September 15, 2012, Correctional Officer Chad Crabtree was on duty at Corcoran State Prison. Defendant, an inmate, had just arrived back at his cell from the medical facility.

Crabtree instructed defendant to step into the dining hall so he could search defendant. Defendant complied. Crabtree told defendant to remove his shirt. When Crabtree searched the shirt, he found a Chapstick container inside. Inside the container,

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

he found a handwritten note wrapped in cellophane. Crabtree put the cap back on the container and placed it inside his pocket.

Crabtree then instructed defendant to remove his pants. After defendant complied, Crabtree instructed him to remove his boxer shorts. Defendant hesitated, turned away from Crabtree, and according to Crabtree, started digging in his groin area.

Concerned for his safety and his partner's safety, Crabtree ordered defendant to "get down." Defendant began to step away from Crabtree. Crabtree grabbed defendant's arms to gain control of him. Defendant began thrashing his body and flailing his arms. At that point, Crabtree was struck in the face by defendant's right elbow.

Defendant tried to run away from Crabtree, but Crabtree maintained his hold on defendant. Defendant pulled away from Crabtree and moved toward the wall. Defendant spun his body, causing Crabtree's right shoulder to strike the wall. Crabtree took defendant to the ground. Crabtree was taken by ambulance to a hospital for treatment of the injury to his shoulder.

### *Defense*

The defense asserted Crabtree used excessive force against defendant in the course of the search, and as a result, defendant had acted in self-defense. During his case-in-chief, defense counsel, Mr. Stover, recalled Crabtree, who had previously testified as a witness for the prosecution, to the stand.

Crabtree testified he never forced defendant into a wall. When asked why his initial report about the incident stated he had forced defendant into a wall, he clarified he had only forced defendant toward the wall. Stover asked Crabtree whether he made contact with any objects as he was taking defendant to the ground, Crabtree responded, "the wall." Stover pointed out Crabtree previously testified he was 10 feet away from the wall. Crabtree stated he had traveled a distance of five feet during the struggle with defendant, 10 feet from where he had initiated the search.

Stover also emphasized that Crabtree's initial report omitted any indication that he was struck in the face by defendant's elbow. Although it also did not appear in his medical evaluation form, Crabtree maintained that he told medical staff during his medical evaluation that he had been struck by defendant. Crabtree's partner, who was present, was not involved in the confrontation.

**Pretrial Proceedings**

On February 21, 2014,[2] defendant refused to leave his cell to appear at the trial confirmation. The court ordered him to be extracted from his cell on February 24th for trial.

On February 24th, defendant appeared with his defense counsel, Stover, in court. Stover related the following to the court:

> " … I was informed last Friday that Mr. Herrera had acted out in a somewhat unusual way spreading feces around his cell and on himself. I'm informed this morning that Herrera was picked up from an ACH, or Acute Care Hospital, crisis bed. Mr. Herrera was a CCCMS [Correctional Clinical Case Management System] client previously at the prison in regards to some psychiatric issues.

> "He advises me this morning he had a death in the family and that he's on some new medications. It seemed like it was fairly difficult for him to get that information out to me this morning. I have some concerns about his lucidity and his ability to participate in trial today.

> "I'd ask to vacate the current trial date, set a date out three weeks, and I would ask the Court for an order that CDCR [the California Department of Corrections and Rehabilitation] disclose to me the medications that Mr. Herrera is currently on and/or his current treatment status so I can evaluate whether a further psychiatric proceeding is necessary or not."

The court vacated trial dates and ordered the California Department of Corrections and Rehabilitation (CDCR) to disclose to counsel all medications defendant was

---

**2** All dates occurred in 2014.

prescribed and taking, as well as defendant's psychiatric and medical status. It also noted defendant did not appear to be in a lucid state, remarking defendant had his head down and he was not responsive to questions.

On March 19th, Stover appeared in court to discuss defendant's medical status. He advised the court, "although Mr. Herrera is currently on EOP[3] status at the prison, I spoke with him this morning. He seems coherent. He was able to speak with me about the case." Stover stated there had been no resolution in the case and requested the court set trial for April 14th. The court agreed.

Defendant's trial commenced on April 14th. On April 15th, a jury found him guilty of the lesser included offense of resisting a peace officer (§ 148, subd. (a)(1)) on count 1, and guilty on count 2 of battery on a correctional officer (§ 4501.5).

**Marsden Motion**

On July 21st, defendant made a posttrial *Marsden* motion. Defendant sought substitute counsel, complaining there were conflicts of interest present, count 2 was added to the information but dismissed in the CDCR proceedings, Stover failed to investigate his mental health status, and he never saw his private investigator. Defendant also wanted Stover to file a motion for new trial, which Stover declined to do.

The court informed defendant CDCR proceedings have nothing to do with criminal proceedings in a trial court.

Stover explained to the court the conflict of interest defendant was referring to was Stover's decision not to move to dismiss the section 4501.5 charge based on insufficient evidence. Given the evidence, Stover stated he found no basis for filing a section 995 motion to dismiss.

---

**3** "EOP" refers to Enhanced Outpatient Program, a prison inpatient care program for mentally ill inmates.

With respect to defendant's claim Stover did not investigate his mental health status, defendant claimed Stover never looked at his mental health records, did not have him see a doctor, and Stover had not filed any motions with respect to defendant's mental health status. Defendant stated he was taking medication, he was in a treatment program (EOP), and he had previously suffered a severe mental breakdown as a result of what was going on with his family.

Stover responded, "although [defendant] was EOP and a couple of times refused to come to court, he's always been coherent, he's always been able to cooperate with counsel." Stover also stated, "[t]here was no indication in the reports or my discussions with [defendant] that he didn't understand right from wrong at the time of the incident, at least as to a [Penal Code section] 1026 [not guilty by reason of insanity]. And that issue was discussed with him."

With respect to the section 1368 competency hearing, Stover told the court, "[defendant has] always been competent and able to discuss the matters with me, and, in fact, has always been extremely adamant about his side of the issues in this matter and able to communicate those to me extremely well." According to Stover, defendant's refusal to come to court and initial refusal to speak to him was not attributed to defendant's mental illness. Defendant simply decided not to do so.

Defendant also complained Stover was not keeping him informed on what was going on with his case and claimed when he asked Stover about a motion for retrial, Stover told defendant it was irrelevant and they would appeal defendant's case. Defendant stated he would make a motion for new trial, provided the court would allow him to do so, and the matter was not irrelevant to him because he was facing a sentence of 25 years to life.

The court denied defendant's motion, explaining Stover had "acted as any other competent attorney [would] in these matters."

## DISCUSSION

### 1. <u>Ineffective Assistance of Counsel</u>

Defendant claims Stover rendered ineffective assistance of counsel by calling Crabtree to the stand to testify. He contends Stover only called Crabtree to testify because he incorrectly assumed that only one act committed by defendant could support the battery charge—defendant's act of elbowing Crabtree in the head. Defendant argues Crabtree's testimony caused the jury to focus on defendant's actions rather than Crabtree's conduct, "rendering a guilty verdict nearly inevitable on count 2." We conclude there was no error, and in any event, no prejudice.

A defendant claiming ineffective assistance of counsel in violation of his Sixth Amendment right to counsel must show defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and also that it is reasonably probable, but for counsel's failings, the result would have been more favorable to the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694.) The burden rests with the defendant to show inadequate or ineffective representation, and the proof " 'must be a demonstrable reality and not a speculative matter.' " (*People v. Karis* (1988) 46 Cal.3d 612, 656.)

On appeal, we look to the record to see if there is any explanation for the challenged aspects of representation. If the reasons for defense counsel's actions are not readily apparent from the record, we will not assume constitutionally inadequate representation and reverse a conviction unless the record discloses " ' "no conceivable tactical purpose" ' for counsel's act or omission." (*People v. Lewis* (2001) 25 Cal.4th 610, 674-675; accord, *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

By asserting Stover was incompetent, defendant essentially contends there was no conceivable tactical purpose in calling Crabtree to the stand to testify. From the record, however, it is readily apparent Stover's purpose in calling Crabtree to testify was to attack his credibility. When Stover called Crabtree to the stand, he pointed out

7.

inconsistencies between Crabtree's prior testimony, and his initial report describing the incident.

For example, Stover asked Crabtree whether he ever forced defendant into a wall. After Crabtree stated he did not force defendant into a wall, Stover pointed out Crabtree's initial report had indicated otherwise. Stover also asked Crabtree how he could have hit the wall when he had previously testified he was 10 feet away from it. Although Crabtree was able to explain these inconsistencies, Stover's decision to call Crabtree to testify was a reasonable tactical decision.

Defendant argues Stover called Crabtree to testify under the mistaken assumption only one act supported the battery conviction: defendant striking Crabtree in the head with his elbow. His argument, however, is untenable in light of the fact the prosecutor clearly stated in his opening statement that two acts supported the battery charge against defendant. The first was defendant's act of striking Crabtree in the head with his elbow, and the second was defendant's act of pushing Crabtree into the wall. There is simply no evidence in the record to suggest Stover operated under the mistaken assumption that only one act could support the battery charge.[4]

Even assuming defense counsel did err in calling Crabtree to testify, we find no prejudice as a result. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's error, the outcome at trial would have been different. (*People v. Williams* (1997) 16 Cal.4th 153, 215.) Defendant argues if Crabtree had not been called to testify by Stover, he would not have been convicted on count 2 because the prosecutor failed to provide a motive for

---

**4**     Defendant contends Stover insisted there could be no battery conviction because Crabtree did not report a blow to his head. His assertion misinterprets the record. In closing, Stover emphasized the fact that Crabtree did not initially report defendant's act of striking him in the head with his elbow to cast doubt on the veracity of Crabtree's claims. We do not agree with defendant's assertion that this tactic evidenced a misunderstanding by Stover that only this act could support the battery charge.

defendant to resist Crabtree. According to defendant, his lack of a motive to resist Crabtree supported the inference Crabtree acted unreasonably and outside the scope of his duty pursuant to the incident.

Under CALCRIM No. 2723, to prove battery by a prisoner (§ 4501.5), the People must prove (1) the defendant willfully touched the victim, a nonprisoner, in a harmful or offensive manner; (2) the defendant was serving a sentence in a state prison during the offense; (3) the victim was not serving a sentence in state prison; and (4) the defendant did not act in self-defense. Plainly, the People did not have to prove defendant had a motive to resist Crabtree.

Defendant's assertion that Stover committed ineffective assistance of counsel by calling Crabtree to testify is without merit.

## 2. **Section 1368 Hearing**

Defendant claims the trial court erred by failing to suspend proceedings to order a section 1368 competency evaluation. We are not persuaded.

Due process is violated when an incompetent defendant undergoes a criminal trial. (*People v. Lightsey* (2012) 54 Cal.4th 668, 690.) A defendant is incompetent to stand trial if the defendant lacks the ability to rationally consult with defense counsel, or the defendant cannot understand the nature of the legal proceedings against him or her. (*Ibid.*) A defendant is presumed competent unless proven otherwise by a preponderance of the evidence by the party alleging incompetency. (*People v. Blacksher* (2011) 52 Cal.4th 769, 797.)

A trial court's duty to suspend criminal proceedings arises only when there is a doubt as to a defendant's competency to stand trial, not when there is merely a doubt as to the existence of a mental disorder or developmental disability that does not implicate a defendant's competency to stand trial. (*People v. Romero* (2008) 44 Cal.4th 386, 420.) When there is substantial evidence a criminal defendant is incompetent, the court must grant a section 1368 motion. Where there is less than substantial evidence, the trial court

9.

has discretion to order a competency hearing. The trial court's decision is given great deference because it had the opportunity to observe the defendant during trial. (*People v. Kaplan* (2007) 149 Cal.App.4th 372, 383.)

Section 1368 addresses the procedures in criminal competency proceedings and provides that if a doubt arises in the judge's mind as to the defendant's competence to stand trial, the judge must state that doubt on the record and ask the attorney whether, in his or her opinion, the defendant is mentally competent. (§ 1368, subd. (a).) Upon counsel's request, or the court's own motion, the court *must* recess the proceedings for a reasonably necessary period of time to permit counsel to confer with the defendant and form an opinion as to the defendant's mental competence. (*Ibid*.) If counsel advises the court that he or she believes the defendant may be mentally incompetent, the court *must* order a section 1368 competency hearing. If counsel advises the court that he or she believes the defendant is mentally competent, the court *may*, nonetheless, order a hearing. (§ 1368, subd. (b).)

Stover never declared a doubt as to defendant's competency to stand trial. Pursuant to subdivision (a) of section 1368, he merely requested more time to investigate whether defendant was mentally competent. Although the trial court noted defendant did not appear to be lucid on February 24th—the date defendant's trial was originally scheduled to begin—the court vacated trial dates to permit Stover to determine whether he should declare a doubt as to defendant's competency. On March 19th, Stover advised the trial court, "although Mr. Herrera is currently on an EOP status at the prison, I spoke with him this morning. He seems coherent. He was able to speak with me about the case." As a result, defendant's trial commenced on April 14th.

While defendant complained he had a history of mental illness at his *Marsden* hearing, the court was permitted to accept Stover's opinion when he stated: "[defendant has] always been competent and able to discuss the matters with me, and, in fact, has always been extremely adamant about his side of the issues in this matter and able to

10.

communicate those to me extremely well." (*People v. Smith* (1993) 6 Cal.4th 684, 696 [Where there is a conflict between claims made by the defendant and his or her defense counsel, the trial court is entitled to accept defense counsel's representations].) It is well established that a person may be mentally ill but, nonetheless, competent to stand trial. (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1128-1129 [conditions which result from a mental illness " 'do not necessarily imply incompetence or a reduced ability to understand, and make decisions about, the conduct of the proceedings' "].)

We recognize defense counsel's opinion as to whether a defendant is mentally competent is not determinative of whether a defendant is actually competent (*Odle v. Woodford* (9th Cir. 2001) 238 F.3d 1084, 1089), however, the record here does not show sufficient evidence existed to raise a reasonable doubt in the mind of the trial judge about defendant's competency. (See *Id*. at p. 1089 [finding a reasonable judge would have had a bona fide doubt as to the defendant's competency to stand trial where the defendant suffered massive head trauma, was missing a grapefruit-sized piece of his brain, and exhibited psychotic behavior].)

We conclude a competency hearing was not required under section 1368, nor did the trial court abuse its discretion in failing to order such a hearing given a lack of substantial evidence casting doubt on defendant's mental competency. Aside from one isolated period of unusual behavior by defendant, it appears he had the ability to consult with his defense counsel with rationality, to assist with his defense, and to understand the nature of the legal proceedings and charges against him.

**3. Defendant's *Marsden* Motion**

In his final claim on appeal, defendant claims the trial court erred in denying his posttrial *Marsden* motion seeking substitution of his defense counsel. Defendant complained (1) he had a conflict of interest with Stover regarding the battery charge; (2) Stover failed to review documents pertaining to defendant's history of mental illness; (3) Stover failed to communicate with defendant prior to and during trial; and (4) Stover

11.

failed to make a motion for new trial upon defendant's request. We conclude defendant's *Marsden* motion was properly denied by the trial court.

When a defendant seeks substitution of counsel based on inadequate representation, the trial court must permit the defendant to explain the basis of his or her contention and to relate specific instances of counsel's alleged inadequate performance. A defendant is entitled to relief if the record clearly demonstrates counsel failed to provide competent representation, or the defendant and counsel have become embroiled in an irreconcilable conflict from which ineffective representation is likely to result. The decision whether to grant a substitution of counsel is within the discretion of the trial court. We will not find abuse of discretion unless the failure to substitute appointed counsel substantially impaired the defendant's right to effective assistance of counsel. (*People v. Roldan* (2005) 35 Cal.4th 646, 681, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Here, defendant contends had his *Marsden* motion been granted, substitute counsel would have filed a successful motion for new trial based on ineffective assistance of counsel. Defendant claims a motion for new trial would have been granted based on multiple instances in which Stover allegedly rendered incompetent counsel. As we explain below, none of defendant's claims have merit.

First, defendant complained he had a conflict of interest with Stover because defendant wanted him to file a section 995 motion to dismiss the battery charge based on insufficient evidence. Stover explained he did not file the motion because he saw no basis for it. Given the evidence against defendant, the trial court agreed. Defendant does not explain how Stover's decision not to file a section 995 motion constituted ineffective assistance of counsel. Defense counsel has the right to make tactical decisions which may be contrary to the express wishes of the client. (*People v. Harris* (1993) 14 Cal.App.4th 984, 990.) We conclude Stover's decision not to file the motion did not constitute ineffective assistance of counsel.

12.

Second, defendant alleges Stover failed to review documents pertaining to defendant's mental illness. The documents defendant refers to are those the trial court ordered CDCR to produce, and relate to defendant's medications and his psychiatric and medical status.

Assuming, *arguendo,* Stover did not obtain and review defendant's mental health records from CDCR, defendant has failed to show prejudice as a result. To show prejudice pursuant to a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's error, the outcome at trial would have been different. (*People v. Williams, supra,* 16 Cal.4th at p. 215.) However, defendant does not explain how the contents of the CDCR records would have resulted in a more favorable outcome at trial.

To the extent the records may have demonstrated defendant was receiving treatment for a mental illness, that does not prove he would have had a viable defense as a result of his mental illness. " 'A person may be mentally ill or mentally abnormal and yet not be legally insane.' " (*People v. Coddington* (2000) 23 Cal.4th 529, 608, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

Nor would defendant's mental health records have necessarily cast doubt on his competency to stand trial. "[E]ven a history of serious mental illness does not necessarily constitute substantial evidence of incompetence .…" (*People v. Blair* (2005) 36 Cal.4th 686, 714, rejected on other grounds by *People v. Black* (2014) 58 Cal.4th 912, 919.) This is particularly true here because Stover advised the court at defendant's *Marsden* hearing that defendant had "always been competent." Thus, even assuming Stover failed to obtain defendant's mental health records, defendant has failed to show prejudice as a result.

Third, defendant claims Stover failed to communicate with him about the case. In denying defendant's *Marsden* motion, the trial court found there had been no breakdown in communications with defendant sufficient to constitute ineffective assistance of

counsel.  Defendant does not cite us to any evidence in the record from which we may conclude otherwise, other than his own assertions made at the *Marsden* hearing.  We, therefore, reject his claim.

We reject defendant's contention that Stover should have filed a motion for new trial based on ineffective assistance of counsel.  Defendant has failed to show Stover rendered ineffective assistance of counsel.  Because defendant does not allege any other basis for the motion, we conclude Stover was not obligated to file such a motion.  Further, we do not presume an irreconcilable conflict existed between defendant and Stover simply because Stover declined to file the motion despite defendant's insistence he do so.  (*People v. Jackson* (2009) 45 Cal.4th 662, 688 [tactical disagreements between a defendant and counsel do not in themselves constitute an irreconcilable conflict].)

We conclude the trial court did not abuse its discretion in denying defendant's posttrial *Marsden* motion.

## DISPOSITION

The judgment is affirmed.

_____

LEVY, Acting P.J.

WE CONCUR:


_____

DETJEN, J.


_____

PEÑA, J.

14.